# EXHIBIT E

To Motion In *Limine*
to Preclude Certain Opinion Testimony of Bruce E. Dale

Excerpts from transcript of 1/29/2007 trial testimony
of Bruce E. Dale

JoAnn C. Bacheller
Registered Diplomate Reporter
Certified Realtime Reporter
P. O. Box 1424
Billings, Montana 59103-1424
406/247-4477 office
406/247-7008 fax
joann_bacheller@mtd.uscourts.gov

United States Court Reporter


```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MONTANA
                        BILLINGS DIVISION

UNITED STATES FIDELITY AND    )
GUARANTY COMPANY,             )
                   Plaintiff, )  CV-04-29-BLG-RFC
     and                      )
                              )  VOLUME 6
CONTINENTAL INSURANCE COMPANY,)  TRANSCRIPT OF JURY TRIAL
          Plaintiff Intervenor,)
     vs.                      )
                              )
SOCO WEST, INC., BRILLIANT    )
NATIONAL SERVICES, INC.,      )
STINNES CORPORATION, and      )
BRENNTAG (HOLDING) N.V.,      )
                  Defendants. )
_____)


          BEFORE THE HONORABLE RICHARD F. CEBULL
             UNITED STATES DISTRICT COURT JUDGE
                 FOR THE DISTRICT OF MONTANA


          James F. Battin United States Courthouse
                   316 North 26th Street
                   Billings, Montana 59101
                  Monday, January 29, 2007
                    08:53:01 to 16:53:52


          Proceedings recorded by machine shorthand
     Transcript produced by computer-assisted transcription
```

Page 1225

```
 1            APPEARANCES
 2  For the Plaintiff      MR. JOHN I. GROSSBART
    USF&G:                 MR. ROBERT C. JOHNSON
 3                         MR. M. KEITH MOSKOWITZ
                           Attorneys at Law
 4                         8000 Sears Tower
                           233 South Wacker Drive
 5                         Chicago, Illinois 60606
 6                         MR. MARSHAL L. MICKELSON
                           Attorney at Law
 7                         P. O. Box 509
                           Butte, Montana 59703
 8
    For the Plaintiff      MR. MAXON R. DAVIS
 9  Intervenor Continental:    Attorney at Law
                           P. O. Box 2103
10                         Great Falls, Montana 59403
11                         MR. BRIAN W. WALSH
                           Attorney at Law
12                         405 Howard Street, Suite 600
                           San Francisco, CA 94105
13
    For the Defendants:    MR. THOMAS C. MIELENHAUSEN
14                         MR. CHRISTOPHER L. LYNCH
                           Attorneys at Law
15                         4200 IDS Center
                           80 South Eighth Street
16                         Minneapolis, Minnesota 55402
17                         MR. LAWRENCE B. COZZENS
                           Attorney at Law
18                         550 North 31st Street, Suite 250
                           Billings, Montana 59101
19
    Also present for       MS. JULIANNE ROHM
20  graphics display:      MR. MIKE S. GREER
21
22
23
24      REPORTER'S NOTE: "Uh-huh" and "Um-hmm" indicate
    affirmative responses. "Huh-uh" and "Hm-umm" indicate
25  negative responses.
```

Page 1226

```
 1                    CONTENTS
 2  Proceedings ............................... 1228
 3  Defendants Rest ........................... 1240
 4  Motion of Plaintiffs ...................... 1382
 5  Order of Court ............................ 1384
 6  Volume 6 Reporter's Certificate ........... 1469
 7
 8                    WITNESSES
 9  For the Defendants:
10  Mr. Larry Nelson (by deposition)
        Direct Examination by Mr. Cozzens ................. 1235
11      Cross-Examination by Mr. Mickelson ................ 1238
12  For the Plaintiff and Plaintiff Intervenor:
13  Mr. Marvin Johnson (by videotape deposition)
        Examination by Mr. Ruggiero ....................... 1242
14      Examination by Mr. Cromley ........................ 1314
        Examination by Mr. Ross ........................... 1321
15      Reexamination by Mr. Ruggiero ..................... 1324
16  Mr. Richard Brill (by videotape deposition)
        Examination by Mr. Ruggiero ....................... 1327
17      Examination by Ms. Omvig .......................... 1359
        Examination by Mr. Ross ........................... 1360
18      Reexamination by Mr. Ruggiero ..................... 1368
19  Bruce Edwin Dale, Ph.D.
        Direct Examination by Mr. Davis ................... 1371
20      Cross-Examination by Mr. Lynch .................... 1418
        Redirect Examination by Mr. Davis ................. 1439
21
    Mr. Ken Kjos (by deposition)
22      Direct Examination by Mr. Mickelson ............... 1444
23
24
25
```

Page 1227

```
 1                    EXHIBITS
 2  For the Plaintiff and Plaintiff Intervenor:     Received
 3   84     05/01/86 Warehouse meeting minutes ............. 1308
 4   3200   Compilation: USF&G Policy No. SMP326188 ....... 1231
 5   3201   Compilation: USF&G Policy No. 1CC599480 ....... 1232
 6   3202   Compilation: USF&G Policy No. SMP406309 ....... 1232
 7   3203   Compilation: USF&G Policy No. 1CC944574 ....... 1232
 8   3204   Compilation: USF&G Policy No. CEP64280 ........ 1232
 9   3205   Compilation: USF&G Policy No. 1CC945882 ....... 1231
10   3206   Compilation: USF&G Policy No. CEP64348 ........ 1231
11   3207   Compilation: USF&G Policy No. SMP535107 ....... 1231
12   3208   Compilation: USF&G Policy No. SMP576121 ....... 1231
13   3209   Compilation: USF&G Policy No. 1CCA31253 ....... 1231
14   3210   Compilation: USF&G Policy No. CEP84958 ........ 1231
15   3211   Compilation: USF&G Policy No. SMP594660 ....... 1231
16   3213   Compilation: USF&G Policy No. CEP104806 ....... 1232
17   3214   Compilation: USF&G Policy No. SMP654057 ....... 1231
18   3216   Compilation: USF&G Policy No. CEP114516 ....... 1231
19   3217   Compilation: USF&G Policy No. SMP772986 ....... 1231
20   3219   Compilation: USF&G Policy No. CEP114641 ....... 1232
21   4027   Dyce site photo (D032604) ..................... 1282
22   4072   Compilation: USF&G Policy No. SMP535107 ....... 1231
23   4143   Dyce site photo ............................... 1450
24
25
```

Page 1228

```
 1                    PROCEEDINGS
 2      (Open court.)
 3      (Jury not present.)
 4      THE COURT: Please be seated.
 5      Good morning. I hear that we have some issues on
 6  some exhibits?
 7      MR. MIELENHAUSEN: Yes, Your Honor. Before we close
 8  our case, we just want to basically load in the insurance
 9  policies. We have compiled a set of the policies from
10  Exhibit 3200 through Exhibit 3219. We tried to come to a
11  resolution about some objections that the insurance companies
12  have raised. We're not able to do that.
13      I learned this morning that they have some specific
14  things that they have to do with these exhibits. Rather than
15  get into all that, Your Honor, I think that the best way to do
16  this is for us to load in what we believe are the policies and
17  then, if the insurance companies have any additional changes
18  or they believe there's some modifications, then they can load
19  in their version of the exhibit. I think that's probably the
20  best way to go.
21      THE COURT: What do you mean, "their version"?
22  Aren't they the same?
23      MR. MIELENHAUSEN: They're claiming there are
24  additional pages that should be in.
25      MR. MOSKOWITZ: Right. There's a series of
```

Page 1409

```
 1  could have made it to the northwest corner, to the hotspots as
 2  indicated in the ROD?
 3  A   Yes, I do.
 4  Q   What is your opinion, Professor?
 5  A   Again, I don't think that any of it could have made it
 6  out there. It evaporates too fast, it soaks in, and it would
 7  have left a track.
 8  Q   Would there be any question in your mind as to the extent
 9  of this -- can you explain to the jury the extent of change to
10  the loading area that would have been observable to just about
11  any person with their wits about them?
12  A   Well, it would have been exposed to lots of perc for a
13  long period of time. There would have been perc left in any
14  low spots. Not all of it. Just -- you know, we've all seen
15  water run through ditches. Perc, again, is like water in that
16  sense. You don't just go by and nothing left, no residue of
17  liquid left. Plus, that, it's dissolved in the asphalt. It's
18  dissolved in a huge, working on a huge circumference or circle
19  area of asphalt and attacking it. It's a large spill so it's
20  spread out more. It's evaporating. You know, it just won't,
21  it just won't get up there 400 feet away.
22  Q   But what's that loading area and unloading area look like
23  after 1,000 gallons of perc has been dumped in it, in the
24  facilities there?
25  A   It's a mess. It's a huge mess. Every low spot has got
```

Page 1410

```
 1  perc in it, and in those low pots the asphalt is dissolved,
 2  making it a tar, a gooey mess. If people go out there and
 3  drive trucks through it, they'll see that the asphalt has been
 4  destroyed. You'll see large areas of the gravel, the
 5  aggregate exposed because the perc has flowed past it,
 6  dissolved the asphalt and taken it away. I mean, it's not
 7  possible that people wouldn't see that. It's not possible
 8  that they wouldn't have observed that.
 9  Q   Let me return finally to another property of perc, which
10  is its odor. And let's go back to the 500-gallon spill. Is
11  there a way to calculate for the jury how noticeable a
12  500-gallon spill of perc would have been at the Dyce facility
13  back in the 1970s?
14  A   In terms of its odor?
15  Q   Yes.
16  A   Yes, uh-huh.
17  Q   You can calculate that?
18  A   Yes, you can.
19  Q   Explain.
20  A   These are standard methods, but people can smell perc at
21  about 50 parts per million. That's 5/1,000ths of 1 percent.
22  So in air, 50 parts per million is 5/1,000ths of 1 percent,
23  and that's what you and I can smell.
24  Q   So?
25  A   Well, if you calculate 500 gallons of perc evaporating,
```

Page 1411

```
 1  you can calculate the volume of air that that would fill up,
 2  and then so by knowing the volume of air, you know the
 3  diameter or the total distance over which a spill of perc of
 4  that size would be, would be noticeable by people.
 5  Q   Did you do that for 500 gallons?
 6  A   Yes, I did.
 7  Q   And what does that translate?
 8  A   It's a hemisphere, a bowl, that's about a little over
 9  1,000 feet in diameter from side to side. So it would fill up
10  a hemisphere, a bowl, if you will, of air that's 1,000 feet
11  across with perc at 50 parts per million.
12          MR. DAVIS: Mike, could you pull up, from the ROD
13  again, Exhibit 3059, page 118?
14          DOCUMENT TECHNICIAN: (Complied with request.)
15          MR. DAVIS: No, try 19. No, I think it was -- hard
16  to see. Go back to 18.
17          DOCUMENT TECHNICIAN: (Complied with request.)
18  BY MR. DAVIS:
19  Q   Do you see a scale there in the lower right-hand corner
20  of that exhibit, Professor Dale?
21  A   Yeah, I guess I do.
22  Q   Okay. And can you see, can you locate the Brenntag
23  facility there?
24  A   Yes.
25  Q   Okay. Using that scale and using your index finger or
```

Page 1412

```
 1  other digit of choice, can you give this jury a rough
 2  approximation of how big an area around the Brenntag/Dyce
 3  facility in which you'd have this sphere you've just described
 4  where people would have been able to smell perc?
 5  A   Well, the scale is 100 feet. The whole distance there is
 6  200 feet. So if you take that plus that -- sorry. Not doing
 7  too great a job here.
 8      This distance is roughly 200 feet. So double it to make
 9  it 400 feet. And put that at the center of a, of a bubble
10  that would be -- I'm not doing this well.
11      It would be like that.
12  Q   So anyone in that, that area you've drawn on this exhibit
13  would have been able to smell a 500-gallon perc spill at the
14  Dyce loading facility?
15  A   Yes. Actually that area and probably more.
16  Q   Let me go back to that loading and unloading area, and
17  let's assume someone has come on the scene and wants to, in
18  fact, cover up the spill and is trying to do something, such
19  as wash it with a garden hose or do something. With
20  500 gallons of perc, as they're standing there by this puddle,
21  what would you expect to have with the odor, the fumes coming
22  off?
23  A   At 50 parts per million, people can smell perc pretty
24  easily. At a concentration 10 times that, 500 parts per
25  million, people start to get -- actually, more susceptible
```

Page 1429

1  entered it, the perc wouldn't evaporate; isn't that correct?
2  A   I'm sorry. Are you saying that the perc got to the water
3  up there in the northwest corner? It would sink through the
4  water, and it would not evaporate, that's right.
5  Q   Now you talked about also your calculations regarding the
6  odor of perc and how far of an area that would extend. What
7  were you assuming the wind speed to be?
8  A   In that case, I was assuming zero wind speed.
9  Q   Zero wind speed.
10 A   (Nodded head affirmatively.)
11 Q   Have you ever -- strike that.
12     Is that a realistic assumption for outdoors, Billings,
13 Montana, that there's going to be no wind?
14 A   In the area immediately by the warehouse, because it's
15 somewhat protected from the wind, I think that that is closer
16 to being the truth than it is to be a high wind speed. But,
17 no, I mean, Billings has -- this is near the mountains. We
18 have wind, and so there is always some wind.
19 Q   And that's why, for your evaporation calculation, you
20 used 9 miles an hour?
21 A   Right.
22 Q   Yet for your odor calculation, you chose no wind?
23 A   Well, that's one of the illustrations I did, that's
24 right.
25 Q   Do you know which way the prevailing winds are in this

Page 1430

1  area?
2  A   They come from the west, generally.
3  Q   The west, generally.
4      I'd like to introduce a proposed illustrative exhibit.
5      MR. DAVIS: Well, not seeing it, I'd object on
6  foundation.
7      THE COURT: I haven't seen it.
8      MR. LYNCH: (Handing.)
9      MR. DAVIS: (Handing.)
10     THE COURT: I'll turn the jury screen off. Just put
11 it up there.
12     MR. LYNCH: Actually we don't have it on the screen,
13 Your Honor.
14     THE COURT: Put it on the DOAR there.
15     THE CLERK: (Complied with request.)
16     MR. DAVIS: That's fine.
17 (Pause.)
18     THE CLERK: Do you want me to go through it? Is
19 there a certain page?
20     THE COURT: Let me see it. You don't have to -- oh,
21 okay.
22     THE CLERK: (Handing.) It's pretty lengthy.
23     MR. LYNCH: It's from a government website, Your
24 Honor.
25     MR. DAVIS: I object to counsel --

Page 1431

1      MR. LYNCH: Self-authenticating.
2      MR. DAVIS: I object to counsel trying to do what
3  I've objected to.
4  (Pause.)
5      THE COURT: Oh, let's have a sidebar.
6  (Discussion on the record at sidebar.)
7      THE COURT: What is it? It says "Free Copy,
8  Climatic Wind Data for the U.S. through 1996." From when to
9  1996?
10     MR. LYNCH: It's from -- it should say on the front
11 page, I believe, Your Honor.
12     THE COURT: I didn't see it.
13     MR. LYNCH: 1930 to 1996.
14     THE COURT: 1930 to 1996.
15     MR. LYNCH: And it's from a government website,
16 self-authenticating.
17     THE COURT: What are you going to do with it?
18     MR. LYNCH: Just show that the prevailing winds in
19 Billings are from the southwest, blowing away from the
20 facility.
21     THE COURT: What do you -- I mean, are you going to
22 use this as a reliable treatise under the rules of evidence,
23 or are you going to use it as some kind of official
24 government -- why are you going to use it?
25     MR. LYNCH: As an official government brochure,

Page 1432

1  issued by the government.
2      THE COURT: I don't think the rule covers -- what do
3  the rules cover? I mean, why can't you say, "If I told you
4  the" -- I mean, who is it kept by?
5      MR. LYNCH: U.S. Department of Commerce, National
6  Oceanic and Atmospheric Association.
7      THE COURT: I mean, you know, if it's a reliable
8  treatise, you can use it in evidence, put it in evidence, but
9  the jury doesn't get to take it with them. But he's got -- I
10 don't know if he'll admit and say it's a reliable treatise
11 that he relied on. Doesn't sound like it.
12     MR. DAVIS: The only one authenticating this is
13 counsel. I'm not saying he's a liar, but I can't tell if it
14 came from the government or not.
15     THE COURT: That's what it says.
16     MR. DAVIS: That's great. I've got a word
17 processor, too.
18     THE COURT: I'm not going to allow you to put it in,
19 but ask him if he'd argue if you've seen climatological data
20 from the government that says the predominant wind is from the
21 southwest. Is that what you're trying to get at?
22     MR. LYNCH: Yeah.
23     THE COURT: Do it that way.
24 (Open court.)
25 (Jury present.)