JoAnn Corson Bacheller
Registered Diplomate Reporter
Certified Realtime Reporter
P. O. Box 1424
Billings, Montana 59103-1424
406/247-4477 office
406/247-7008 fax
joann_bacheller@mtd.uscourts.gov

United States Court Reporter


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION


| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) ) |
| Plaintiff, | ) Nos. CV-04-29-BLG-RFC ) CV-08-29-BLG-RFC |
| and | ) |
| THE CONTINENTAL INSURANCE COMPANY, | ) **FINAL PRETRIAL CONFERENCE** ) ) |
| Plaintiff Intervenor, | ) |
| vs. | ) ) |
| SOCO WEST, INC., | ) |
| Defendant. | ) |

**BEFORE THE HONORABLE RICHARD F. CEBULL**
**CHIEF UNITED STATES DISTRICT COURT JUDGE**
**FOR THE DISTRICT OF MONTANA**

James F. Battin United States Courthouse
316 North 26th Street
Billings, Montana 59101
Thursday, March 4, 2010
10:02:48 to 11:43:29


Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription

1                          **APPEARANCES**

2   For the Plaintiff:          MR. ROBERT C. JOHNSON
                                MR. JOHN I. GROSSBART
3                               MS. WENDY N. ENERSON
                                Attorneys at Law
4                               8000 Sears Tower
                                233 South Wacker Drive
5                               Chicago, Illinois 60606

6                               MR. MARSHAL L. MICKELSON
                                Attorney at Law
7                               P. O. Box 509
                                Butte, Montana 59703
8
    For the Plaintiff           MR. BRIAN W. WALSH
9   Intervenor:                 Attorney at Law
                                Suite 330
10                              555 Mission Street
                                San Francisco, California 94105
11
                                MR. STEVEN M. CRANE
12                              Attorney at Law
                                Suite 1500
13                              515 South Figueroa Street
                                Los Angeles, California 90017
14
                                MR. MAXON R. DAVIS
15                              Attorney at Law
                                P. O. Box 2103
16                              Great Falls, Montana 59403

17  For the Defendant:          MR. CHRISTOPHER L. LYNCH
                                MR. PAUL A. BANKER
18                              Attorneys at Law
                                4200 IDS Center
19                              80 South Eighth Street
                                Minneapolis, Minnesota 55402
20
                                MR. LAWRENCE B. COZZENS
21                              Attorney at Law
                                Suite 104
22                              1643 24th Street West
                                Billings, Montana 59102
23

24

25

1                              **CONTENTS**

2    Proceedings .........................................   9

3    Reporter's Certificate ..............................   74

4

5                              **EXHIBITS**

6    **Exhibit No.**                          **Received Volume/Page**

7    5        09/05/89 Letter to Hol from Johnson ......... FPT/  56

8    30       09/11/85 Memo to Managers of All Plants from
             Q. Dyce  ................................... FPT/  56
9
     143      02/26/82 Continental General Liability
10            Survey Report form ......................... FPT/  23

11   231      06/15/00 Letter to USF&G from Whalen ........ FPT/  24

12   234      09/25/00 Letter to Downing from Mielenhausen. FPT/  24

13   352      04/08/74 Memo to Bender from Whaley ......... FPT/  28

14   353      09/27/72 Memo to Murray from Q. Dyce ........ FPT/  57

15   359      09/11/85 Memo from Q. Dyce ................. FPT/  28

16   362      09/13/89 Memo to Q. Dyce from Naff ......  FPT/ 28, 57

17   366      Warning label for perchloroethylene and
             instructions on empty container handling
18            and reuse .................................. FPT/  57

19   383      07/23/00 Letter to Rowe from Miller ......... FPT/  29

20   433      12/16/99 Letter to G. Staarjes from USEPA ... FPT/  58

21   436      01/06/99 E-mail between Miller and Warne .... FPT/  58

22   445      03/16/73 USF&G Advertising ................. FPT/  30

23   499      11/04/75 Aerial photograph ................. FPT/  31

24   505      02/23/82 Continental General Liability Survey
             Report ..................................... FPT/  31
25

1                          **EXHIBITS (Continued)**

2    **Exhibit No.**                            **Received Volume/Page**

3    784      08/21/95 Handwritten notes ................. FPT/   58

4    785      08/18/95 Memo to Naff, Hilton, Biondo,
              Gilbert, Akers and Liebling from Simko ...... FPT/   58
5
     856A     09/25/89 Versar Inc. Environmental Risk
6             Assessment Survey ...................... FPT/ 32, 58

7    859      07/24/89 Draft letter to Hol from Johnson ... FPT/   59

8    1104     09/08/05 Letter to O'Reilly from Terp ....... FPT/   32

9    2532     11/1975 Aerial photograph .................. FPT/   32

10   2533     11/04/75 Aerial photograph ................. FPT/   32

11   2545     12/30/05 Bulk Handling and Properties of PPG
              Chlorinated Solvents:  Perchloroethylene,
12            Trichloroethylene, Tri-Ethane .............. FPT/   59

13   3004     08/23/00 Letter to Rowe from Miller ......... FPT/   32

14   3006     08/27/72 Aerial photograph ................. FPT/   32

15   3015     07/1995 HCI Dyce site plan ................. FPT/   32

16   3017     01/1983 Dyce personnel manual .............. FPT/   33

17   3025     07/02/87 Memo to Dick, Russ, Bob, Kevin,
              Ivan, John and File from Roger ............. FPT/   36
18
     3044     12/16/99 USEPA First Request for Information
19            Pursuant to 104(e) ........................ FPT/   37

20   3045     03/01/00 Dyce Response to First 104(e)
              Request ................................... FPT/   37
21
     3047     08/23/00 Letter to Naff from Risner &
22            Kercher ................................... FPT/   37

23   3048     08/23/00 Dyce Supplemental Response to
              USEPA's Second 104(e) Request .............. FPT/   38
24
     3049     10/03/00 Maxim Technologies Inc. Site
25            Investigation Report ...................... FPT/   37

4

1                          **EXHIBITS (Continued)**

2      **Exhibit No.**                              **Received Volume/Page**

3      3050      06/2003 Tetra Tech EM Inc. Remedial
                 Investigation Report for MDEQ .............. FPT/   39
4
       3051      07/07/04 Tetra Tech Final Feasibility Study
5                Report for MDEQ ........................... FPT/   39

6      3052      11/2004 MDEQ/USEPA Proposed Remedial Action
                 Plan for Lockwood Groundwater Solvent
7                Plume Site ................................ FPT/   39

8      3058      12/2003 Tetra Tech Addendum 01 to the Final
                 Remedial Investigation Report for MDEQ ...... FPT/   39
9
       3059      08/2005 MDEQ/USEPA Record of Decision for
10               Lockwood Solvent Groundwater Plume Site ..... FPT/   39

11     3060      02/28/06 Letter to Terp from Risner &
                 Kercher ................................... FPT/   40
12
       3102      09/16/85 Memo to Colver ................... FPT/   41
13
       3115      11/25/92 Letter and permit application to
14               Lincoln from Diede ........................ FPT/   42

15     3174      06/09/00 Letter to Webster from Miller ...... FPT/   43

16     3175      06/12/00 Letter to Miller from Webster ...... FPT/   43

17     3178      07/25/00 Fax to Stevenson from Miller ....... FPT/   43

18     3191      11/13/03 ATC Associates Inc. Soil and
                 Groundwater Data Remedial Design Investigation
19               Report .................................... FPT/   43

20     3200      Compilation:  USF&G Policy No. SMP326188 .... FPT/   44

21     3201      Compilation:  USF&G Policy No. 1CC599480 .... FPT/   44

22     3202      Compilation:  USF&G Policy No. SMP406309 .... FPT/   44

23     3203      Compilation:  USF&G Policy No. 1CC944574 .... FPT/   44

24     3204      Compilation:  USF&G Policy No. CEP64280 ..... FPT/   44

25     3205      Compilation:  USF&G Policy No. 1CC945882 .... FPT/   44

1                          **EXHIBITS (Continued)**

2    **Exhibit No.**                              **Received Volume/Page**

3    3206   Compilation:   USF&G Policy No. CEP64348 ..... FPT/   44

4    3207   Compilation:   USF&G Policy No. SMP535107 .... FPT/   44

5    3208   Compilation:   USF&G Policy No. SMP576121 .... FPT/   44

6    3209   Compilation:   USF&G Policy No. 1CCA31253 .... FPT/   44

7    3210   Compilation:   USF&G Policy No. CEP84958 ..... FPT/   44

8    3211   Compilation:   USF&G Policy No. SMP594660 .... FPT/   44

9    3213   Compilation:   USF&G Policy No. CEP104806 .... FPT/   44

10   3214   Compilation:   USF&G Policy No. SMP654057 .... FPT/   44

11   3216   Compilation:   USF&G Policy No. CEP114516 .... FPT/   44

12   3217   Compilation:   USF&G Policy No. SMP772986 .... FPT/   44

13   3219   Compilation:   USF&G Policy No. CEP114641 .... FPT/   44

14   3220   03/03/06 Stipulation as to Existence and
            Content of USF&G Insurance Policies ........ FPT/   44
15
     3287   02/28/05 Letter to Terp from Risner &
16          Kercher ................................... FPT/   48

17   3321   03/03/06 Stipulation as to Existence and
            Content of Continental Insurance Policies
18          and Exhibits .............................. FPT/   49

19   3407   1971 Chemical Safety Data Sheet for
            perchloroethylene ..................... FPT/ 49, 61
20
     3408   1972 Hooker Chemical MSDS for
21          trichloroethylene ......................... FPT/   49

22   3410   1980 PPG manual ........................... FPT/   50

23   3433   1983 Dyce brochure ........................ FPT/   50

24   3438   04/1971 Perchloroethylene brochure ...... FPT/ 50, 61

25   3475   02/06/84 Dyce policies re: DOT ............. FPT/   50

1                        **EXHIBITS (Continued)**

2    **Exhibit No.**                          **Received Volume/Page**

3    3483    Aerial photograph ........................... FPT/  51

4    3484    Aerial photograph ........................... FPT/  51

5    3485    Aerial photograph ........................... FPT/  51

6    3486    Aerial photograph ........................... FPT/  51

7    3487    Aerial photograph ........................... FPT/  51

8    3488    Aerial photograph ........................... FPT/  51

9    3490    1972 Aerial photograph ...................... FPT/  51

10   3491    1981 Aerial photograph ...................... FPT/  51

11   3492    1987 Aerial photograph ...................... FPT/  51

12   3800    05/27/57 Aerial photograph .................. FPT/  52

13   3801    06/26/66 Aerial photograph .................. FPT/  52

14   3802    05/22/69 Aerial photograph .................. FPT/  52

15   3803    08/18/71 Aerial photograph .................. FPT/  52

16   3804    04/23/72 Aerial photograph .................. FPT/  52

17   3805    Circa 1973 Aerial photograph ................ FPT/  52

18   3806    06/18/74 Aerial photograph .................. FPT/  52

19   3807    11/04/75 Aerial photograph .................. FPT/  52

20   3808    06/23/77 Aerial photograph .................. FPT/  52

21   3809    09/06/77 Aerial photograph .................. FPT/  52

22   3810    05/03/79 Aerial photograph .................. FPT/  52

23   3811    05/14/79 Aerial photograph .................. FPT/  52

24   3812    07/31/79 Aerial photograph .................. FPT/  52

25   3813    03/13/81 Aerial photograph .................. FPT/  52

1                          **EXHIBITS (Continued)**

2    **Exhibit No.**                        **Received Volume/Page**

3    3814    06/02/81 Aerial photograph .................. FPT/  52

4    3815    08/24/81 Aerial photograph .................. FPT/  52

5    3816    05/27/83 Aerial photograph .................. FPT/  52

6    3817    07/27/83 Aerial photograph .................. FPT/  52

7    3818    04/30/87 Aerial photograph .................. FPT/  52

8    3826    08/08/05 Response to 06/24/05 CERCLA 104(e) . FPT/  53

9    3827    02/14/05 Letter to Moskowitz from
             Mielenhausen ............................... FPT/  53
10
     3828    02/15/05 Letter to Walsh from Mielenhausen .. FPT/  53
11
     3886    06/15/00 Letter to Continental from Whalen .. FPT/  55
12
     3887    09/25/00 Letter to Giblin from Mielenhausen . FPT/  55
13
     3888    01/08/07 Second stipulation as to existence
14           and content of USF&G insurance policies ..... FPT/  55

15   4044    07/1976 Location Survey of Dyce site ........ FPT/  62

16   4320    1980 Bulk Handling and Properties of PPG
             Chlorinated Solvents ....................... FPT/  63
17
     4822    07/20/00 E-mail to Miller from Naff ......... FPT/  64
18

19

20

21

22

23

24

25

                                  PROCEEDINGS

1

2          (Open court.)

3              THE COURT:  All right.  How many days is this going

4     to take this time?

5              MR. BANKER:  I would say our case would probably go

6     in in four to five days.

7              THE COURT:  How long is it going to take for your

8     case?

9              MR. JOHNSON:  About the same, Your Honor.

10             THE COURT:  You're not going to have ten days,

11    because I can't be here March 19, which is the last Friday.

12             MR. DAVIS:  What about the following Monday?

13             THE COURT:  You don't have to stand up.  Just sit

14    there and talk.

15             MR. DAVIS:  What about the following Monday?

16             THE COURT:  What is the following Monday?

17             MR. DAVIS:  The 22nd.

18         (Discussion off the record.)

19             THE LAW CLERK:  It's my understanding, Judge, you

20    still have one criminal trial setting that day.  Actually two

21    on the calendar, but one is supposed to plead.

22             THE COURT:  You heard that we have one is going to

23    plead and the other, so far, isn't.

24             How long is it going to take for you guys to put on

25    your case?

1      MR. DAVIS:  I think Mr. Johnson was speaking for all

2 of us.

3      THE COURT:  Four or five days?

4      MR. DAVIS:  To be candid with you, seems like only

5 yesterday, but three years ago, they had an expert.  We had an

6 expert.  They now have an expert.  We have designated

7 basically four experts, and they have three rebuttal experts.

8 The fact witness part doesn't change.

9      THE COURT:  Well, are you going to have the same

10 number of fact witnesses?

11      MR. DAVIS:  Pretty much.

12      MR. COZZENS:  There will be less testimony.  We're

13 paring that down.

14      THE COURT:  I would think so.  And that Friday, I am

15 not going to be on a frolic of my own.  I'd just as soon not

16 be gone, I'll tell you that.

17      The last time, what did it take, nine days?

18      THE LAW CLERK:  Eight and deliberations.

19      MR. DAVIS:  The jury came back -- they went out

20 Wednesday afternoon, and they came back with that question

21 Thursday morning.

22      MR. COZZENS:  To be honest with you, Judge, if

23 they're really at four to five days, I think we'll be done

24 before Friday the 19th, because we're really trying to get

25 ours pared down where I hope we can be done with our evidence

1   Thursday morning.

2           THE COURT:  Well, that's what we're going to shoot

3   for.  I don't know if that criminal case will go off or not,

4   but I want to be able to tell the jury in a couple of weeks

5   they're going to be done.

6           We'll do the same thing we did last time, seat eight

7   jurors.  We have a whole bunch coming up for a criminal case

8   that Judge Shanstrom is going to be trying.  We have 35 coming

9   in.  We'll either put 16 or 18 in the box.  Probably 18.  And

10  then I'll just decide, depending on how short the list gets,

11  whether you're going to get four peremptories a side or five.

12  I won't know how difficult it will be to get people committing

13  for two weeks until we get them in here.

14          You have the jury list; are there a lot of them from

15  out of town?

16          THE CLERK:  (Handing.)

17          THE COURT:  There are a lot from Billings.

18          We can also probably get our hands on some of the

19  people that are coming in for the criminal case, too.

20          MR. JOHNSON:  Your Honor, can we get the information

21  with regard to those people if we're going to use that list?

22          THE COURT:  Yeah, you'll get it.  We have the list

23  pulled, so you'll get the information that we have on them.

24          MR. JOHNSON:  Okay.  Thank you.

25          THE COURT:  I'll give you a half hour a side for

1   *voir dire*.  We'll go on the same rules as last time.  Don't

2   directly challenge some prospective juror for cause.  As I

3   told you the last time, if they start running on me when I'm

4   asking questions, I'll boot them off if I get the slightest

5   sense that they couldn't be fair.  If, when you're asking

6   questions, somebody starts running on you, I will butt in and

7   take over, and I'll either boot them off or, if I don't, it

8   will be because I don't think there's probably a valid grounds

9   for removal for cause, although there could be.

10          And when we're done, both sides, in their half hour

11  of *voir dire*, if you don't want to pass the jury for cause,

12  just tell me you want a sidebar.  Come to sidebar and state

13  your challenge for cause on the record, and then I'll rule at

14  that time.  Same way as last time.  If I boot somebody for

15  cause or when I'm talking to them about how long this trial is

16  going to take and they tell me they can't sit here for two

17  weeks and I excuse them, as soon as I excuse them, we'll put

18  somebody in the chair.

19          You got any questions?

20      (Counsel responded negatively.)

21          THE COURT:  I don't remember how much -- I looked at

22  the transcript of the final pretrial this morning.  How much

23  time did I give you for opening?

24          MR. JOHNSON:  Forty-five minutes a side, Your Honor.

25          THE COURT:  Okay.  I see I put down here a

1    seven-member jury.  No, going that long, we'll put eight on

2    there.  I think that's what we had last time.

3            MR. MICKELSON:  I think that's right.

4            THE COURT:  Cheri has gone through the exhibit list.

5    Pull out Soco's will-offer exhibit list.

6            Now last time -- you know, I have this rule that

7    when you call a witness, you give me this little brief

8    statement of what you're going to say.  What I want on it this

9    time is -- and last time I had you primarily list the exhibits

10   that you were going to offer through that witness.  That's

11   primarily what I want on those witness things.  You don't need

12   to tell me what they're going to testify to.

13           I want you to tell me, give me a list of the

14   exhibits that you're going to offer through that witness, and

15   then tell me if they were admitted at the last trial.  And I

16   think, obviously, a lot of these, maybe all of these exhibits,

17   have the same number as you had the last time.

18           MR. JOHNSON:  Many of them do.

19           THE COURT:  Larry, I think you guys did the same

20   thing, didn't you?

21           MR. COZZENS:  Yes.

22           THE COURT:  Just put on there what exhibit numbers

23   and then tell me if they were admitted or not, and put on

24   there if they were offered the last time but they were

25   refused.  Make a note of that.

1          Are there going to be those occasions where I

2    refused an exhibit the last trial -- maybe you should look

3    into these, Larry (referring to hearing aids).

4          MR. COZZENS:  I should, actually, Judge.  I'm just

5    noticing that.

6          THE COURT:  They make them now for high frequency

7    hearing loss, even.

8          MR. COZZENS:  Do they do anything for memory?

9          THE COURT:  No.  No.  No, they really don't,

10   unfortunately.  Gives you more things to forget.

11         MR. COZZENS:  That's right.

12         THE COURT:  Are there going to be instances where

13   exhibits are going to be offered this time that were offered

14   and refused the last round?

15         MR. GROSSBART:  Your Honor, this --

16         THE COURT:  You don't really need to stand up.

17         MR. GROSSBART:  This doesn't quite fit that

18   scenario, but there is a series -- there's a brief and a

19   response regarding a portion of one early government report

20   that's still pending with the Court.  It involves a government

21   report that was -- maybe you're holding it.

22         THE COURT:  Yeah.

23         MR. GROSSBART:  It involves a government report that

24   was admitted last time, and the insurers seek to exclude a

25   portion of it this time.  Not in its entirety but a section.

1          THE COURT:  So what you're telling me is other than

2    that, there's not going to be any exhibits that were offered

3    and refused the last trial?

4          MR. GROSSBART:  I'm telling you that's the one that

5    rose to the level of a brief.  We would have to do some

6    cross-checking -- I think both sides would -- to see if the

7    positions are entirely consistent with last time.  I couldn't

8    make that representation to you now.

9          THE COURT:  Well, on this witness sheet that you

10   give me, I want to know that.  If there are some exhibits that

11   are being offered that you tried to offer through that witness

12   the last trial and I refused it -- and you'll be able to tell

13   me.  And also tell me the volume and page number where it was

14   offered and refused.

15         MR. DAVIS:  Judge?

16         THE COURT:  Because I'm going to have that.  I'm

17   going to have that transcript available to me up here,

18   somewhere, during that trial.

19         MR. DAVIS:  There are going to be a number of

20   exhibits I think both sides will use; say, I think you'll

21   recall, something like the 1975 aerial photograph of the site.

22   Do you want that listed for every witness who's going to talk

23   about it when we give you these statements?

24         MR. MICKELSON:  Or just offered through that

25   witness?

1          THE COURT:  Just offered.

2          MR. GROSSBART:  I think there is a large, and --

3          THE COURT:  Yeah, I don't need, I don't need, on

4    that witness list, every exhibit that that witness is going to

5    talk about.

6          MR. DAVIS:  Okay.

7          THE COURT:  Just the ones that --

8          MR. DAVIS:  Will be offered in evidence?

9          THE COURT:  Yeah, through that witness.

10          MR. DAVIS:  All right.

11          THE COURT:  And I assume it will be the same witness

12    that you offered them into evidence through at the last trial.

13    I'm assuming that.

14          MR. JOHNSON:  So if a document, if an exhibit is

15    already admitted because we agreed it would be admitted, we

16    don't have to put that on the list, I take it?

17       (No response.)

18          MR. JOHNSON:  On our respective lists, there are no

19    objections to many of the exhibits, and if there's no

20    objection, I presume that Your Honor would deem them to be

21    admitted today?

22          THE COURT:  That's exactly what I'm going to do.

23          MR. JOHNSON:  Okay.  So we don't have to put those

24    on the list?

25          THE COURT:  No.

1          MR. JOHNSON:  Okay.

2          MR. COZZENS:  There is one thing, though.  I think

3    we may be offering some exhibits through different witnesses

4    because we're trying to pare down the list and do it more

5    efficiently this time.

6          THE COURT:  You mean ones that won't be admitted

7    today?  Is that what you're talking about?

8          MR. COZZENS:  Maybe, yes.

9          THE COURT:  Yeah, if they're different exhibits that

10   I didn't rule on the last trial --

11         MR. COZZENS:  No, what I meant to say is you said

12   you presumed that the same exhibits would be offered through

13   the same witness.  We're paring down our witness list.  We may

14   have some exhibits offered with a different witness this time,

15   but we'll let you know that.

16         THE COURT:  Well, I mean, as a practical matter,

17   you're not going to be -- I'll admit the ones that there are

18   no objections to today.

19         MR. COZZENS:  (Nodded head affirmatively.)

20         THE COURT:  So all you need to do, when you get up

21   and you have a witness, you can direct them to exhibit number

22   so and so, put it on the screens, and refer to it as, "I'm

23   showing you exhibit so and so which has previously been

24   admitted."  I only want a list of those exhibits that haven't

25   been admitted with the witness that you're going to put them

1    in through.

2            MR. COZZENS:  Very good.

3            MR. BANKER:  Judge, you mentioned about for exhibits

4    where it had been offered and refused last time.  You want a

5    page and volume number of the transcript.  How about for

6    things that had been admitted last time at trial?  Do you want

7    the same designation to the prior transcript or not?

8            THE COURT:  No, because -- are there, other than

9    this one we're talking about, are there exhibits that were

10   admitted at the last trial that are objected to in this one?

11           MR. LYNCH:  There are, Your Honor, and that's

12   indicated in Soco's exhibit list, the will-offer.  If it was

13   previously admitted, we have a date column.  Under the "Date

14   Admitted" column.

15           THE COURT:  Yeah, I see.  And you mean -- are the

16   ones that you're talking about the ones that refer to a

17   footnote?

18           MR. LYNCH:  No.  It's any one that has an entry

19   under the "Date Admitted" column.

20           THE COURT:  Yeah.

21           MR. LYNCH:  The insurers have objected to some of

22   those now, so there are objections to some of those exhibits,

23   whereas before sometimes you admitted them over objection and

24   some of them are new objections, I believe.

25           THE COURT:  Well, how many, how many of those are

1   like that, fall in that category, do you know?

2           MR. GROSSBART:  Just scanning the list, Your Honor,

3   I'm just scanning Soco's will-call, it may be a couple dozen,

4   but that's just really a quick eyeball.  I don't think it's

5   anything that will require an extraordinary amount of court

6   time or that which we can't deal with when those exhibits are

7   actually offered and come up.  I don't think it's going to be

8   unmanageable.

9           THE COURT:  Well, what I was going to do is go

10  through right now and admit all of these that I admitted the

11  last time, but you're saying that there are a number with -- I

12  mean, on Soco's will-offer list, there are a lot of them that

13  were admitted, and I am just looking at the first page, but

14  there are objections in every column.

15          MR. GROSSBART:  These are insurance -- on the first

16  page, 1 of 19 of Soco's will-offer list, they appear to be

17  letters from, well, Mr. Mielenhausen to people at USF&G, some

18  USF&G departmental circulars from way back when.  Frankly, I

19  don't have the documents in front of me, but they look like

20  Phase 2 issues based on my memory.  There are -- but that's

21  probably a category that would suck in a lot of this.

22          There is a bunch of stuff, if you look, for example,

23  on page 4 of 19, it comes up a couple times, and some other

24  pages, where Soco is trying to put in significant amounts of

25  documents regarding its policies, guidelines, and so forth

1   well into the '80s and '90s.

2            THE COURT:  Didn't I rule on those things?

3            MR. GROSSBART:  You ruled, but we objected then.

4   You ruled against us.  It seems to me we need to preserve that

5   objection on a going-forward basis, and so we've made the

6   objection again.

7            MR. LYNCH:  And, Your Honor, to some of that, that's

8   why we included the footnotes.  The footnotes indicate whether

9   certain of these exhibits, for example, where there's a

10  Footnote 2, those are exhibits where the insurance companies

11  did not assert an objection last time.

12           THE COURT:  Right, and you're claiming that they're

13  waived now.

14           MR. LYNCH:  And Footnote 1 is where, you know, they

15  withdrew their objection when the exhibit was offered.

16           THE COURT:  All right.  Let's start on page 1 of the

17  will-offer.

18           MR. LYNCH:  Your Honor, before we begin, I think

19  both sides have changed their witnesses lists slightly.  Soco

20  has a revised will-offer list that has three new exhibits on

21  the bottom, at the end of it, that aren't objected to.  If

22  you'd like, I can circulate copies of those.

23           THE COURT:  Are they identical except for the last

24  three?

25           MR. LYNCH:  Except for the last three, they are.

1            THE COURT:  What page are you -- I'm looking at

2    page 20 of 21, and there are three at the end that --

3            MR. GROSSBART:  I'm sorry, Judge; what page are you

4    on?

5            THE COURT:  I'm just looking at 20 and 21.  There

6    are three exhibits that are listed.  And I'm looking at -- I

7    mean, we had this in the last pretrial.  We had discussions

8    about whether the letters between lawyers were coming in.

9    What's the purpose of letters between lawyers in 2005, page 20

10   and 21 of Soco's will-offer list?

11           MR. LYNCH:  Your Honor, some of these exhibits,

12   those letters at the end of the will-offer list just relate to

13   when notice was given and acknowledged by the insurance

14   companies.

15           THE COURT:  Well, let's start with page 1.

16           So all of the -- I'm looking at, I guess, not the

17   current will-offer list?

18           MR. LYNCH:  If you want the current one.  Otherwise,

19   if we want to rule on the ones on that list, then we can --

20           MR. GROSSBART:  Yeah.  The other thing I would just

21   throw in, and it will ultimately make things easier, since

22   these exhibit lists, at least the versions that Your Honor is

23   working off of, have been provided to the Court, we've

24   worked -- we talk, Mr. Lynch and I and our team, we talk with

25   each other, it seems, daily.  We've got a long -- we've got a

1    very short stipulation that covers a lot of documents.  For

2    example, all of the aerial photos now have -- I think it's

3    fair to say, and Mr. Lynch will correct me if I'm wrong --

4    have been stipulated to.  You will see a lot of entries for

5    aerial photos with objections, but there really aren't any

6    objections anymore.  We've worked, since the pretrial order

7    was filed, we've have been working hard to resolve a bunch of

8    this stuff, and I just don't know what is in front of Your

9    Honor at this moment.

10              THE COURT:  In terms of the list, it's the --

11              MR. GROSSBART:  What version you have.  You

12   mentioned 20 and 21 on the list in front of you.  There are

13   objections to photos that have been doctored, but there aren't

14   objections to the underlying photos.  There's issues of that

15   sort, and it may not be as complicated as what it appears.

16              THE COURT:  No, this 20 and 21 -- there isn't a

17   page 21 on this.  Oh, yeah, there is.  That was the, that was

18   the footnote page.  Okay.

19              Well, I think it's agreed that this list that I

20   have, consisting of 21 pages, includes all of the will-offer

21   exhibits except the last three.

22              MR. LYNCH:  Yes.

23              THE COURT:  All right.

24              Exhibit 143, page 1, what is the new objection?

25              MR. WALSH:  For 143, Your Honor, we're withdrawing

1   the objections.

2              THE COURT:  It's admitted.

3        (Exhibit 143 was received in evidence.)

4              THE COURT:  216.

5        MR. WALSH:  Your Honor, on that exhibit, it appears

6   to be claim file notes by Continental, and we don't know what

7   possible relevance that would have to Phase 1 issues.

8              THE COURT:  What is the relevance?

9        MR. BANKER:  I think that's correct.  It is a

10  Phase 2 exhibit.

11             THE COURT:  Okay.  It's refused.

12        231.  All right, 231, what's the new -- at the first

13  trial, you withdrew your objection, and there's some new

14  objections.  What are they?

15        MR. JOHNSON:  Your Honor, we just think that this

16  document is irrelevant.

17        Do we have it here or not?

18        (Discussion off the record at counsel table.)

19        MR. JOHNSON:  We argued on the basis of relevance,

20  and we just don't see the relevance of this particular

21  document.  It's a Phase 2 issue.

22        MR. LYNCH:  Your Honor, this is actually the notice

23  letter from Brenntag West to USF&G, notifying them of the

24  *Weiss* action, I believe.

25             THE COURT:  It's admitted.

1        (Exhibit 231 was received in evidence.)

2             THE COURT:  232 and 233, those are --

3             MR. JOHNSON:  Those are subsequent letters, Your

4    Honor, with regard to acknowledging the tender of it, and we

5    just don't see the relevance.  I mean, if the notice is

6    relevant, we understand that, but with regard to whatever

7    response there was we think is irrelevant.

8             MR. BANKER:  As to the response, there were requests

9    for information and things like that, and it goes to, you

10   know, what was known and communicated between the companies at

11   the point when the tender was engaged in.  It's not a huge

12   issue at trial, but the insurers are making an issue of notice

13   and when notice was provided to them.

14            THE COURT:  Well, but I've put in the notice.  Why

15   are those -- I'm going to refuse them.  That's 232 and 233

16   that are refused.

17            234, it's admitted.

18       (Exhibit 234 was received in evidence.)

19            THE COURT:  235, apparently a new objection.  What

20   is it?  What's the new objection?

21            MR. JOHNSON:  This again, Your Honor, is a response

22   to the notice letter, 235.  We think that, if anything, it's a

23   Phase 2 issue.

24            MR. BANKER:  Same issue of communications back and

25   forth following the tender.

1          THE COURT:  It's refused.  It really isn't relevant.

2    You've got notice in here.  235 is refused.

3          296 is admitted.

4          297, apparently this is -- I admitted it initially

5    without objection, and what is the new objection?  Relevance.

6          MR. JOHNSON:  Just relevance.  It's irrelevant, Your

7    Honor.  These department circulars are relevant with regard

8    to -- Your Honor will recall that there's no evidence at all

9    with regard to USF&G ever having been out to the site, ever

10   having done a loss control survey with regard to the site.

11   There's nobody at USF&G that they have taken a deposition of

12   that knew anything about Soco or had any dealings with Soco,

13   so we think that our department circulars with regard to loss

14   control and things like that are totally irrelevant.

15         MR. BANKER:  Your Honor, these are loss control

16   documents that may be referred to by rebuttal expert, and it

17   goes to the question of underwriting and the understanding of

18   the --

19         THE COURT:  Is that the only time it would become

20   relevant, on a rebuttal expert?

21         MR. BANKER:  I believe so, yes.

22         THE COURT:  I'll reserve.

23         MR. COZZENS:  I'm not sure that I agree with that.

24         MR. BANKER:  You don't agree with that?

25         MR. COZZENS:  One of the issues that exists --

1          THE COURT:  I'm going to reserve.  I've got to take

2     a look at it.  I'll reserve on it anyway.

3          MR. COZZENS:  Fair enough.

4          MR. JOHNSON:  Your Honor, would you reserve on 296

5     as well?  Because it falls in the same category.

6          THE COURT:  Yes.

7          298, that wasn't offered the last time.

8          MR. JOHNSON:  It's the same issue, Your Honor.  We

9     have no underwriters to testify with regard -- the

10    underwriting of these policies, we think, is wholly irrelevant

11    to any issue in this case.  I mean, we've admitted the

12    policies.  They say what they say on their face, and whatever

13    underwriting rules we had at the time are irrelevant.

14         THE COURT:  Yeah, what is relevant?

15         MR. COZZENS:  Well, the underwriting rules, and

16    there is testimony from USF&G that they would not have written

17    these policies without doing this loss control stuff and that

18    was their policy.  The fact that they couldn't produce

19    somebody 15 years later who actually said, "I did it," or the

20    documents, doesn't mean that they didn't do it, and so

21    that's --

22         THE COURT:  Yeah, but there isn't an issue about it,

23    is there?

24         MR. COZZENS:  Yeah.  When they say now that we

25    are -- that Dyce ran a sloppy operation that ended up with all

1   this pollution and they had people going out there annually

2   saying they're doing a good job in complying with the EPA

3   requirements, I think that is an issue.

4           MR. JOHNSON:  But there's no evidence that we ever

5   went out there, Your Honor.  They have no, they have no

6   testimony whatsoever of anybody from USF&G having gone to the

7   premises.

8           MR. COZZENS:  But there is testimony that they would

9   not have written the policies without --

10          THE COURT:  I'm going to reserve on it.  I will just

11  have to hear what the witness says.

12          On those lists, now make sure that you let me know

13  which exhibits are not admitted with the witness that you

14  intend to offer, and that's how you will refer to them, you

15  know:  "I am giving you Proposed Exhibit 298."  Use the word

16  "proposed" and I'll know it's not admitted.  Otherwise, you'll

17  say "admitted" exhibit so and so.

18          MR. COZZENS:  All right.

19          THE COURT:  All right.  Exhibit 352, it was admitted

20  the last time.  What is the new objection?

21          MR. GROSSBART:  It's a memo from one Dyce person to

22  another Dyce person.  It's clearly hearsay.

23          MR. LYNCH:  It's a regularly kept business record,

24  Your Honor, and it's from 1974, so it's during the time period

25  at issue.

1          MR. GROSSBART:  A memo, just because a memo is a

2     memo doesn't make every memo a regularly kept business record.

3          THE COURT:  Well, I admit it.  I'm going to admit

4     it.

5        (Exhibit 352 was received in evidence.)

6          THE COURT:  359 is admitted.

7        (Exhibit 359 was received in evidence.)

8          THE COURT:  362 is admitted.

9        (Exhibit 362 was received in evidence.)

10          THE COURT:  365.

11          MR. GROSSBART:  That's a form letter, "valued

12     customers," a place-holder for a form letter, but, again, it's

13     a 1991 form letter.  We're dealing with a spill alleged to

14     have occurred in '75, '76, or '77.  Again, it's what I

15     mentioned earlier.  This information about how they

16     conducted -- they're going to try to prove, Your Honor, that

17     they were a great company in the '70s by all of the good stuff

18     they did in the '90s.  We objected before, and we'll continue

19     to object.  That's the umbrella objection.  Beyond that, it's

20     hearsay.

21          MR. COZZENS:  If I could, this is a good time to

22     bring this up.  They now have an expert who says that whatever

23     the event was that caused the contamination of the northwest

24     corner, it had to have occurred, or in his opinion, occurred

25     prior to 1987.  During this trial, we're not going to

1    introduce any evidence of any operations after 1987, and that

2    would mean '91 is not relevant and won't come in in our case

3    in chief.  Now they may or may not still want to have evidence

4    of operations after '87.  If they do, then we may have to have

5    things like this, but we're not going to present it in our

6    case in chief.

7            MR. GROSSBART:  Well, that sounds like a rebuttal

8    exhibit.

9            THE COURT:  Well, I'm going to reserve on it.

10       (Discussion off the record.)

11           THE COURT:  Okay.  380.

12           MR. GROSSBART:  Same issue.

13           THE COURT:  Is that the same thing?

14           MR. GROSSBART:  Well, yeah.  Those are all internal

15   Dyce people.

16           THE COURT:  I'm going to reserve on it.

17           383 is admitted.

18       (Exhibit 383 was received in evidence.)

19           THE COURT:  425, what is the purpose of that, list

20   of USF&G employees and titles?

21           MR. LYNCH:  Your Honor, that is just a summary list

22   of USF&G employees and titles.  I think the purpose of it was

23   to show who might have been in underwriting in the area, might

24   have had knowledge of underwriting practices.

25           MR. JOHNSON:  We know who our witnesses are.  We

1   don't have anybody, and this isn't discovery.  There's no

2   particular reason for this.

3           THE COURT:  Is that an issue?

4           MR. JOHNSON:  It isn't.  I mean, not to my

5   knowledge.  It's not an issue of who might have had knowledge

6   about this.  I don't know of any witness who is going to

7   testify about that.

8           THE COURT:  I am going to refuse it.

9           How about 445?

10          MR. JOHNSON:  Just, you know, it's USF&G

11  advertising.  You know, we don't see the relevance of it.

12          THE COURT:  I'm going to admit it.  I admitted it

13  the last time.

14      (Exhibit 445 was received in evidence.)

15          THE COURT:  446, AIA chemical hazards bulletin.

16          MR. LYNCH:  That's a document that discusses the

17  prevailing industry standards and knowledge of chemicals,

18  including perchloroethylene, during the 1970s.

19          THE COURT:  Is somebody, some expert, going to refer

20  to it or something?

21          MR. GROSSBART:  That's what I, that's what I assume

22  is the case, and I think the expert can do that.  I don't know

23  that it necessarily needs to get admitted into evidence.

24          THE COURT:  Yeah.  Is an expert going to refer to

25  it?

1          MR. LYNCH:  Yes, Your Honor.

2          THE COURT:  I'll reserve on it, but if he testifies,

3    I'll let him testify about it.

4          449 [sic], aerial photographs, admitted.

5       (Exhibit 499 was received in evidence.)

6          THE COURT:  505.

7          MR. WALSH:  We'll withdraw objection to 505.

8          THE COURT:  505 is admitted.

9       (Exhibit 505 was received in evidence.)

10         THE COURT:  506.

11         MR. WALSH:  That, Your Honor, is underwriting-type

12   material.  All of the policies with Continental have been

13   stipulated to.  It doesn't appear to be relevant.

14         MR. LYNCH:  Your Honor, again, 506 goes to loss

15   control, what they would be doing as far as going out and

16   looking at the site, inspecting the site during the time

17   periods in question.

18         THE COURT:  What's the date of the loss control

19   report guide?  It's got a bunch of zeros there.

20         MR. LYNCH:  I don't know the precise date, Your

21   Honor, but I believe the relevance was that the testimony says

22   that these were the same or similar standards they would have

23   had during the relevant time periods.

24         THE COURT:  Well, I better reserve.  I don't know

25   the date.

1              648, internal audit, corrective action plans.

2              MR. LYNCH:  That would be, again, Your Honor, one

3    we'd offer on rebuttal, now, depending on whether the

4    insurance companies offer evidence of operations.

5              THE COURT:  It's reserved.

6              856A is admitted.

7         (Exhibit 856A was received in evidence.)

8              THE COURT:  1104 is admitted.

9         (Exhibit 1104 was received in evidence.)

10             THE COURT:  2532 is admitted.

11        (Exhibit 2532 was received in evidence.)

12             THE COURT:  2533 is admitted.

13        (Exhibit 2533 was received in evidence.)

14             THE COURT:  3004 is admitted.

15        (Exhibit 3004 was received in evidence.)

16             THE COURT:  3006 is admitted.

17        (Exhibit 3006 was received in evidence.)

18             THE COURT:  3015 is admitted.

19        (Exhibit 3015 was received in evidence.)

20             THE COURT:  3017, I admitted it, but there is an

21   objection now, and there wasn't one.  Go ahead and state it.

22             MR. JOHNSON:  Your Honor, just that it's a personnel

23   manual.  We don't see that it has any relevance to any of the

24   issues in the case.

25             MR. LYNCH:  Your Honor, this manual discusses Dyce

1     procedures regarding safety and operations as well, and it is
2     during the time period when the insurance companies alleged
3     this contamination to have occurred.
4           THE COURT:  I'm going to admit it.
5       (Exhibit 3017 was received in evidence.)
6           THE COURT:  3021, personnel manual additions and
7     revisions.  Now is this repetitious of 3017?
8           MR. LYNCH:  I believe it's an earlier version of it.
9     It has similar, similar provisions in it.  I don't know
10    exactly what the --
11          THE COURT:  Which ones applied?  Or which ones are
12    you going to talk about?  All of them?
13          MR. LYNCH:  I mean, I don't know offhand the extent
14    to which these are different.
15          MR. COZZENS:  Judge, what we're going to do is take
16    it through an employee at the time and ask him if he recalls
17    those being the standards and policies in place at the time.
18          THE COURT:  Well, okay, but 3012 is in 1982.  3017,
19    then, I admitted, is in '83.  What's the difference?
20          MR. COZZENS:  There were differences.  I can't tell
21    you word for word.
22          THE COURT:  Well, were there additions and revisions
23    in 3017?
24          MR. COZZENS:  Is that '83?
25          MR. LYNCH:  Yes, the '83 one, I believe, is slightly

1    different than the '82 one, but, again, I can't tell you,

2    sitting here today, word for word, what the differences are.

3              THE COURT:  Well, which one do you want?

4              MR. LYNCH:  Well, since we got in 3017 last time,

5    we'll probably --

6              THE COURT:  That's what you'll get this time.  3021

7    is refused.

8              3024.

9              MR. GROSSBART:  Your Honor, just briefly, on this

10   one, again, they're complaining about a spill in the loading

11   and unloading area, or I should say alleging a spill in the

12   loading and unloading area well before 1985, and that's how

13   they filled tanks in 1985.  If that's when it happened, then

14   there is no insurance and we can all go home.  At least USF&G

15   could go home.

16             THE COURT:  What is the relevance?

17             MR. COZZENS:  Well, it is to show that some of their

18   theories of how it may have happened would have required

19   things to be done that were contrary to the policy that

20   existed at the time.  They're still arguing that it happened

21   later, in that later time frame.

22             MR. GROSSBART:  Your Honor --

23             THE COURT:  Are you claiming that it happened in

24   '85?

25             MR. JOHNSON:  No.

                              34

1            MR. GROSSBART:  No.  That is a mischaracterization

2     of what we're claiming.  Our main expert, if I could call him

3     that, will talk about the science being consistent with

4     discharges from the catch pond.  We're not going to talk about

5     a spill happening with a properly policy'd hose in 1985.

6            MR. COZZENS:  Well, it had to get to the catch pond.

7            MR. BANKER:  And I think, more globally, the

8     relevance of all of the policies and procedure manuals is to

9     show the evolution of that over time, so they all work

10    together to show how they fit together and how some things

11    didn't change over time.

12            THE COURT:  I don't understand "1985 policy hoses

13    used to fill or empty tank."

14            MR. LYNCH:  It's because, Your Honor, their, to use

15    Mr. Grossbart's term, main expert is now saying that the most

16    likely cause of this was discharges of contaminated water and

17    other substances from the historic catch pond that existed

18    during that time frame.  These types of policies go to show

19    that Dyce was operating essentially a clean operation, that

20    chemicals weren't getting into that catch pond, certainly not

21    to the volume that has been discovered out to the northwest

22    corner now.

23            THE COURT:  I'm going to reserve on that one.

24            3025.  Why is this objectionable now?

25            MR. GROSSBART:  Your Honor, I will confess I don't

1    have this one in my mind as to what it says.

2            THE COURT:  I'm going to admit it.  I did the last

3    time.

4        (Exhibit 3025 was received in evidence.)

5            THE COURT:  3027, memorandum to all employees.  Is

6    that dated 2000?

7            MR. LYNCH:  Yes, Your Honor, so this would be -- I

8    believe that's correct.  I believe this would just be a

9    rebuttal.

10           THE COURT:  I will reserve.

11           3030, compilation exhibit, training documents.

12           MR. LYNCH:  Same thing, Your Honor.  That one would

13   be just rebuttal.

14           THE COURT:  Reserved.

15           3031.  Same thing, huh?

16           MR. LYNCH:  Yes, Your Honor.

17           THE COURT:  Reserved.

18           3033, HCI safety committee policy, 1990.

19           MR. LYNCH:  Same, again, Your Honor.

20           THE COURT:  Reserved.

21           MR. LYNCH:  I believe it's the same thing,

22   everything through 3041.

23           MR. GROSSBART:  The whole page?

24           THE COURT:  Well, 3035, I will reserve on.

25           MR. GROSSBART:  Everything on this page is dated

1   after the relevant cut-off of '87.

2        THE COURT:  I'm going to reserve on it.  You're

3   saying that they will be rebuttal, if they're anything.

4        All right.  We're on page 6, 3042.

5        MR. GROSSBART:  With the prior rulings, that would

6   be a reserve, too.  That's just another volume of the manuals

7   that are described on the previous page.

8        THE COURT:  The same with 3043?

9        MR. GROSSBART:  3043 is the Lockheed report.  That

10  is the subject of the briefing that I think Your Honor was

11  holding where we have an issue about one section.

12       THE COURT:  I see.  I'll reserve on 3042, 3043.

13       MR. GROSSBART:  But so it's clear, Your Honor, other

14  than what we've briefed in the motion, the rest of the report

15  we have no objection to.

16       THE COURT:  3044 is admitted.

17     (Exhibit 3044 was received in evidence.)

18       THE COURT:  3045 is admitted.

19     (Exhibit 3045 was received in evidence.)

20       THE COURT:  3047 is admitted.

21     (Exhibit 3047 was received in evidence.)

22       THE COURT:  3048 is admitted.

23     (Exhibit 3048 was received in evidence.)

24       THE COURT:  3049.

25       MR. GROSSBART:  Your Honor, the problem with this

1    document, the principal problem is whether it was complete or

2    not.  I think we've got that fixed, and everybody agrees we

3    need a couple of documents.  On that assumption, I think you

4    can admit it now as long as --

5             THE COURT:  It's admitted.  What you're talking

6    about may be cross-examination stuff?

7             MR. GROSSBART:  Well, no.  I mean that some of these

8    reports are monsters.

9             THE COURT:  Yeah.

10            MR. GROSSBART:  In the xeroxing process, literally

11   stuff gets lost over the years, and everybody, both sides

12   agree that the reports need to be complete and work diligent

13   to do that, and that was the principal objection here at the

14   time.

15        (Discussion off the record.)

16            MR. GROSSBART:  The principal objection to this

17   exhibit, when we made the objection, was we thought there were

18   missing pages.  I think we've worked to correct that.  We

19   don't have an objection to the document.

20            THE COURT:  3049 is admitted.

21        (Exhibit 3049 was received in evidence.)

22            THE COURT:  3050.

23            MR. LYNCH:  Your Honor, I believe that's the same

24   case with this document, although there is a caveat on this

25   one.  We've now exchanged the complete version of this report,

1    which is, I believe, 18,000-some pages.  What we've given the

2    Court so far in the binders we've provided is just the report

3    itself and the figures and the tables, which is still fairly

4    lengthy.  We will give the Court a disk containing the rest of

5    it, which is all of the appendices to the report, and I think

6    we've agreed with the other side that on the off chance anyone

7    refers to anything in those appendices, we'll obviously

8    provide a hard copy of that.

9            MR. GROSSBART:  That sounds fine.  That's right.

10           THE COURT:  Okay.  It's admitted.

11       (Exhibit 3050 was received in evidence.)

12           MR. GROSSBART:  And I think, Your Honor, just to

13   shortcircuit it, everything on this page is dealt -- can be

14   dealt with in the same or a similar way, which would resolve

15   all of the objections that you see here, and we would ask that

16   they be admitted.

17           THE COURT:  3051, 3052, 3058 are admitted.

18       (Exhibits 3051, 3052, and 3058 were received in

19        evidence.)

20           THE COURT:  3059 --

21           MR. GROSSBART:  Same thing.

22           THE COURT:  Admitted.

23       (Exhibit 3059 was received in evidence.)

24           THE COURT:  3060, what are these letters?  Oh,

25   that's admitted.

1          (Exhibit 3060 was received in evidence.)

2               THE COURT:  3094.

3               MR. GROSSBART:  I don't know.  Just relevance and

4     hearsay.  What does --

5               THE COURT:  What is it?

6               MR. GROSSBART:  Yeah, what is it?

7               MR. LYNCH:  It's just an invoice, Your Honor,

8     talking about some of the construction that was going on at

9     the site during the time frame when the various features, the

10    catch pond, in particular, was being --

11              THE COURT:  Is that going to be an issue?  Is

12    somebody going to testify about it?

13              MR. LYNCH:  It might be used.  A witness may need to

14    refresh his memory looking at this.

15              THE COURT:  I'll reserve on it.

16              How about 3095?  Same thing?

17              MR. LYNCH:  3095 is a -- oh, just it's again during

18    the time frame in dispute here as to when this might have

19    happened.  This is an exhibit that just shows that Dyce was

20    complying with EPA requirements at the time and getting

21    appropriate licensing.

22              THE COURT:  Why do you think it's irrelevant?

23              MR. GROSSBART:  I don't know what the construction

24    is about.  I don't know how it bears, I don't know how it

25    bears on an issue.

                                 40

1          MR. LYNCH:  We're on the next one, John, 3095.

2          THE COURT:  3095, we're talking about.  I reserved

3    on 3094.

4          MR. GROSSBART:  I'm sorry.

5          THE COURT:  That's all right.  Yeah, I'll reserve on

6    3095.

7          Okay.  3102, there's now an objection.  There wasn't

8    the last time.  What is it?

9          MR. GROSSBART:  Your Honor, it's basically relevance

10   and hearsay.  We don't think it's a business record.  It's

11   just an internal memo, and we don't think that it has any

12   relevance to what is going on in this case.

13         THE COURT:  I will admit it.

14       (Exhibit 3102 was received in evidence.)

15         THE COURT:  3108, Dyce promotional materials.

16         MR. GROSSBART:  Your Honor, if these are from the

17   time period, we don't have an objection.  I just think what

18   they're promoting in some unknown year is a different issue

19   than what they might be promoting --

20         THE COURT:  Do you know what years they are?

21         MR. LYNCH:  I'm sorry; I don't, Your Honor, off the

22   top of my head.

23         MR. GROSSBART:  I believe there are plenty of

24   promotional materials in the discovery record that are either

25   dated or, by looking at just the names and faces of the

1  employees who are featured in the materials, we could agree as

2  to when they were from.

3            THE COURT:  I will reserve on 3108 and 3109.

4            3110.

5            MR. LYNCH:  That would be another rebuttal one, Your

6  Honor.

7            THE COURT:  Reserved.

8            How about 3111 and 3115?

9            MR. GROSSBART:  Same thing.

10            MR. JOHNSON:  3111 would be rebuttal, too, I

11  presume.

12            MR. LYNCH:  Yes.

13            THE COURT:  3115 is admitted.  There isn't an

14  objection.

15        (Exhibit 3115 was received in evidence.)

16            THE COURT:  Reserved on 3111.

17            3138.

18            MR. LYNCH:  That would be rebuttal again, Your

19  Honor.

20            THE COURT:  Reserved.

21            3144.

22            MR. LYNCH:  Same, Your Honor.

23            THE COURT:  Reserved.

24            3148.

25            MR. LYNCH:  The same.

1          THE COURT:  Reserved.

2          3149.

3          MR. LYNCH:  Same again.

4          THE COURT:  Reserved.

5          3152.

6          MR. LYNCH:  Same again on that one, Your Honor.

7          THE COURT:  I'll reserve it.

8          3174.

9          MR. GROSSBART:  No objection.

10         THE COURT:  It's admitted.

11     (Exhibit 3174 was received in evidence.)

12         THE COURT:  3175 is admitted.

13     (Exhibit 3175 was received in evidence.)

14         THE COURT:  3178.

15         MR. GROSSBART:  We'll pull our objection.

16         THE COURT:  It's admitted.

17     (Exhibit 3178 was received in evidence.)

18         THE COURT:  3191.

19         MR. GROSSBART:  We'll pull it.

20         THE COURT:  3191 is admitted.

21     (Exhibit 3191 was received in evidence.)

22         THE COURT:  3196, unsigned letter from Diede to

23 Foster.

24         MR. LYNCH:  That again, Your Honor, is a rebuttal.

25         THE COURT:  Reserved.

1          3200.

2          MR. LYNCH:  3200 through, I believe, 3219 are the

3   USF&G policies in this case.  I believe the insurance company

4   has withdrawn their objections.

5          MR. JOHNSON:  Yes, we have, Your Honor.

6          THE COURT:  All right.  3200, 3201, 3202, 3203,

7   3204, 3205, 3206, 3207, 3208, 3209, 3210, 3211, 3213, 3214,

8   3216, 3217, 3219, 3220, they're admitted.

9       (Exhibits 3200, 3201, 3202, 3203, 3204, 3205, 3206, 3207,

10        3208, 3209, 3210, 3211, 3213, 3214, 3216, 3217, 3219,

11        and 3220 were received in evidence.)

12      (Discussion off the record.)

13          THE COURT:  3236, St. Paul memo.

14          MR. LYNCH:  This is a USF&G memo regarding some of

15   their findings and conclusions as to the contamination at

16   issue.

17          THE COURT:  What's it dated?

18          MR. LYNCH:  I believe it's -- I don't know that it

19   has a date on it.  It's a current document.  It's talking

20   about actually the contamination EPA found, so it's dealing

21   with what the EPA had found.

22          MR. JOHNSON:  Your Honor, I think that this is a

23   claim document that we handled with regard to internal claim

24   guys that were looking at the contamination.  I think Your

25   Honor kept all of that out last time.

1          You will recall that they had a witness -- they

2    wanted to read portions of depositions of our claim handlers,

3    and Your Honor said it was all irrelevant.  With regard to one

4    person in particular, Sy Everett, who wrote a memo, which may

5    be this memo, it talks about what he's determined in terms of

6    some other things within the file.  It's all, it's all hearsay

7    and conclusions, and, therefore, we think it's irrelevant and

8    it's all hearsay.

9          THE COURT:  Go ahead.

10          MR. LYNCH:  It wouldn't be hearsay, Your Honor.  It

11    would be an admission against interest.  In this memo, he

12    talks specifically about one of the features or potential

13    sources of the contamination being a ditch that existed in, I

14    believe, 1975, which is precisely the pathway that Soco is

15    stating was the most likely pathway for this contamination.

16          MR. JOHNSON:  Your Honor, he takes what is being

17    alleged by the other side and ruminates on it.  That's all he

18    does.  And as Your Honor ruled last time with regard to his

19    testimony --

20          THE COURT:  Did I rule on this?

21          MR. JOHNSON:  Yes, you ruled.  With regard to him,

22    you said it's all conclusions.  Everything -- it's all

23    opinions, and he's not an opinion expert.  His opinions as to

24    what may have happened --

25          THE COURT:  Who was it?

45

1          MR. JOHNSON:  -- are irrelevant.

2          THE COURT:  Who was it?

3          MR. JOHNSON:  Seymour Everett is the person, Your

4    Honor, Sy Everett.

5          THE COURT:  Is it true what he says?  I mean, did I,

6    in essence, rule on this last time?

7          MR. LYNCH:  I don't recall.  I don't recall if

8    this --

9          THE COURT:  I'm going to reserve on it, but I'm not

10   going to change it.

11         MR. LYNCH:  No, and it may be Your Honor did rule on

12   that portion of his testimony.  I just don't recall.

13         THE COURT:  And 3244, responses to interrogatories,

14   I know, in looking at the final pretrial from the last time,

15   we had this discussion.  What are you talking about?  Putting

16   in all of the responses to interrogatories or requests for

17   admissions?  Is that what you're talking about?

18         I'm not going to -- if you cross-examine somebody

19   and they give an answer that's contrary to something that they

20   responded to either in interrogatories or requests for

21   admissions, you can use it, but I'm not going to put the --

22   are you talking about putting the whole set in?

23         MR. LYNCH:  No, Your Honor.  I believe these -- I

24   know we removed most of these prior to the last trial.  These

25   might just be hold-overs from that.

1          THE COURT:  Well, I'm going to refuse them, but that

2    doesn't mean you can't use them.

3          MR. COZZENS:  (Nodded head affirmatively.)

4          THE COURT:  You know what I'm saying?

5          MR. LYNCH:  Yeah.  Yes, Your Honor.

6          THE COURT:  I mean, that goes for both sides.

7          MR. GROSSBART:  Right.

8          THE COURT:  I'm not going to keep anybody from

9    impeaching some witness with that kind of documentation, but

10   I'm not going to put the whole shooting match in.

11         3283, minutes of special meeting committee on

12   engineering and safety.

13         MR. WALSH:  There's also no foundation here, Your

14   Honor, that this American Insurance Association has --

15         THE COURT:  Speak in that mike.

16         MR. WALSH:  There's no indication here that this

17   document has anything to do with these insurance companies,

18   and it clearly doesn't have anything to do with the

19   underwriting for this site.  Seems like it's clearly

20   irrelevant.  I think there's foundational issues here as well

21   we should have objected on.

22         MR. LYNCH:  Your Honor, this is a document that

23   would likely come in through an expert, and he will establish

24   the foundation that it sets forth.

25         THE COURT:  I'm going to reserve on it.

1              3287 is admitted.

2         (Exhibit 3287 was received in evidence.)

3              THE COURT:  3311.

4              MR. WALSH:  Again, Your Honor, this is Continental

5    advertisements that I believe were not even produced in this

6    case, so there's a foundational issue.  These are not dated.

7    And being the policy stipulation for all of the Continental

8    policies, so it seems irrelevant.

9              THE COURT:  Yeah, what is the relevance of that?

10             MR. LYNCH:  3311, Your Honor, I believe actually

11   goes to loss control and inspection-type issues, and, again, I

12   think it's a document that would come in through an expert.

13             THE COURT:  I'll reserve.

14             3312, is that the same thing?

15             MR. LYNCH:  Yes, Your Honor.

16             THE COURT:  Reserved.

17             3313.  What's the relevance of that?

18             MR. WALSH:  I believe this is Continental claims

19   file information.  It seems completely irrelevant.  I can't

20   imagine how that would have any relevance to Phase 1.  Perhaps

21   it's a Phase 2 issue.  I don't know.

22             MR. BANKER:  I believe it's a Phase 2 issue, Your

23   Honor.

24             THE COURT:  Refused.

25             3321.  That's admitted.

1      (Exhibit 3321 was received in evidence.)

2           THE COURT:  3404, blank form, applications.  I'm

3  going to refuse that.

4           3405, department circular.

5           MR. LYNCH:  Again, Your Honor, that would go to

6  establishing what their loss control and underwriting policies

7  were during the time in question here.

8           MR. JOHNSON:  Again, Your Honor, nobody did any loss

9  control here.  They have no proof that we did, and, therefore,

10 we think it's irrelevant.  Whatever is out there doesn't

11 establish that anything was done.

12          MR. COZZENS:  Same response.  They did it; we just

13 couldn't find the people 20 years later.

14          MR. JOHNSON:  That's an assumption without any basis

15 in the evidence that we did it.

16          THE COURT:  I'll reserve on it.

17          3407 is admitted.

18     (Exhibit 3407 was received in evidence.)

19          THE COURT:  3408, it was admitted but there is a new

20 objection.

21          MR. GROSSBART:  Yeah.  It's the wrong chemical, but

22 we'll withdraw the objection.

23          THE COURT:  3408 is admitted.

24     (Exhibit 3408 was received in evidence.)

25          THE COURT:  3410 is admitted.

1          (Exhibit 3410 was received in evidence.)

2               THE COURT:  3433, new objection.

3               MR. GROSSBART:  Oh.  We'll withdraw the objection.

4     That's for 1983.

5               THE COURT:  It's admitted.

6          (Exhibit 3433 was received in evidence.)

7               THE COURT:  3438 is admitted.

8          (Exhibit 3438 was received in evidence.)

9               THE COURT:  3474.

10              MR. GROSSBART:  This is like the one we saw earlier

11    on which you reserved.

12              THE COURT:  Yeah, I will reserve on it again.

13              3475.

14              MR. GROSSBART:  I think this would fall in the same

15    category.

16              THE COURT:  Would it?

17              MR. LYNCH:  These again, Your Honor, these are just

18    documents showing, during the time the insurance company

19    alleges this likely occurred, what our policies were and

20    practices were at the site.

21              THE COURT:  I'll admit it.

22         (Exhibit 3475 was received in evidence.)

23              THE COURT:  3482, what's the invoice for?

24              MR. LYNCH:  Unfortunately, Your Honor, I don't know

25    off the top of my head.

1              THE COURT:  I'll reserve on it.

2              3483 through 3488 are admitted.

3         (Exhibits 3483, 3484, 3485, 3486, 3487, and 3488 were

4          received in evidence.)

5              THE COURT:  3489, Dyce exhibits not used and

6    contents.

7              MR. WALSH:  I believe, Your Honor, these are

8    Continental claims file materials that clearly they were not

9    used, and, if anything, it's a Phase 2 issue.

10             MR. BANKER:  I think it's a Phase 2 issue, Your

11   Honor.

12             THE COURT:  Refused.

13             3490, admitted.

14        (Exhibit 3490 was received in evidence.)

15             THE COURT:  3491 is admitted.

16        (Exhibit 3491 was received in evidence.)

17             THE COURT:  3492 is admitted.

18        (Exhibit 3492 was received in evidence.)

19             THE COURT:  3500.

20             MR. JOHNSON:  It's a 2000 document dated June of

21   2000, Your Honor.  I think it's irrelevant.

22             THE COURT:  It's a letter.  What's it supposedly

23   relevant to?

24             MR. BANKER:  I believe it's an acknowledgement of

25   the claim by Continental Insurance Company after the tender.

1   I don't think it has anything to do with USF&G.

2            THE COURT:  Well, but is there a dispute about

3   whether -- they're here.

4            MR. WALSH:  Your Honor, I believe this was

5   correspondence after the original acknowledgement, and it has

6   nothing to do with the notice issues.

7            THE COURT:  Okay.  I am going to refuse it.

8            3800, 3801, 3802, 3803, 3804, 3805, 3806, 3807,

9   3808, 3809, 3810, 3811, 3812, 3813, 3814, 3815, 3816, 3817,

10  and 3818 are admitted.

11       (Exhibits 3800, 3801, 3802, 3803, 3804, 3805, 3806, 3807,

12        3808, 3809, 3810, 3811, 3812, 3813, 3814, 3815, 3816,

13        3817, and 3818 were received in evidence.)

14           THE COURT:  3819, photos attached, rebuttal.  Is

15  this a rebuttal witness?

16           MR. LYNCH:  This is a rebuttal expert, Your Honor,

17  and actually this document and some of the other ones that we

18  have indicated with the Footnote 5, these are documents that

19  were prepared by experts, either attached to their reports or

20  since then.  It's Soco's position that none of these should

21  come into evidence.  The experts, to the extent it's part of

22  their opinion, may be able to refer to them on the stand as

23  demonstratives, but they don't need to go back to the jury.

24  And the insurance company has submitted on their witness

25  lists, also, documents prepared by their experts that, in our

1    view, are similar.

2              MR. GROSSBART:  Your Honor, that's right.  We just

3    want symmetry.  The experts are going to be using lots of

4    demonstratives, and they're either demonstratives or they come

5    into evidence.  I think they're, frankly, demonstratives,

6    myself, but both sides have put them on their exhibit lists,

7    and we'll cross-examine their folks about the stuff, but I

8    don't see how any expert's demonstrative exhibit,

9    demonstration, drawing comes into evidence unless there's a

10   separate reason for that.

11             THE COURT:  Yeah.  You don't disagree with that, do

12   you?

13             MR. LYNCH:  No, we don't, Your Honor.

14             MR. DAVIS:  No.  No, no.  They're all

15   demonstratives.

16             THE COURT:  I am just going to write from 3820

17   through -- or 3819 through 3825 are going to be demonstrative,

18   and I won't admit them or refuse them.

19             3826, 3827, and 3828 are admitted.

20         (Exhibits 3826, 3827, and 3828 were received in

21          evidence.)

22             THE COURT:  And those are the only ones I've got.  I

23   don't have the other three.

24             MR. LYNCH:  I can, if Your Honor would like --

25             THE COURT:  Are there objections to the other three?

1          MR. LYNCH:  I don't believe so.

2          MR. MICKELSON:  What are they?

3          MR. WALSH:  Are you on 3886?

4          MR. GROSSBART:  What are the other three?

5          MR. COZZENS:  3886, 3887, and 3888.

6      (Discussion off the record.)

7          MR. GROSSBART:  Give us a moment, please.

8          MR. WALSH:  I believe 3886 is the original notice

9  letter, and if that's the case, we don't have any objections

10 to that.

11     (Discussion off the record.)

12         MR. LYNCH:  Your Honor, would you like a copy of the

13 updated --

14         THE COURT:  If there's agreement, tell me the

15 numbers and I'll admit them.

16         MR. LYNCH:  I believe 3886, 3887, and 3888.  Do you

17 have any objections?

18         MR. DAVIS:  Our only one is 86.  The other two are

19 you guys.

20         MR. JOHNSON:  Oh, okay.  No, 87 is yours.

21         3888, Your Honor, is a stipulation we entered into,

22 and we have no problem with that.

23         MR. LYNCH:  3887 is the notice letter regarding the

24 EPA action, EPA claim to Continental.

25         MR. WALSH:  I believe that's correct, Your Honor.

54

1    We have no objection to it.

2             THE COURT:  3886, 3887, and 3888 are admitted.

3    Right?

4             MR. WALSH:  Yes.

5             MR. JOHNSON:  Yes.

6        (Exhibits 3886, 3887, and 3888 were received in

7         evidence.)

8             THE COURT:  All right.  This reminds we.  We agreed

9    the last time; you guys gave me a statement to read to the

10   jury about giving them an idea about what this case is about.

11   Is there a different statement this time?

12            MR. COZZENS:  Judge, I haven't reviewed that.

13            THE COURT:  Give it to me Monday morning.

14            All right.  The insurers' will-offer.

15            MR. WALSH:  Your Honor, if we could go back just a

16   minute to 3887?  I think we skipped -- we first looked at that

17   and thought it was the notice letter, but 3886 is clearly the

18   original notice letter.  3887 is just further correspondence.

19            MR. LYNCH:  3887 is actually notice of the EPA

20   claim.  3886 is notice of the *Weiss* action.

21            MR. WALSH:  Okay.

22            THE COURT:  Okay.

23            MR. LYNCH:  One other point quickly, Your Honor, on

24   this list.  We talked a little bit about Sy Everett's

25   testimony.  I believe it was Exhibit 2533, which is the

1  marked-up 1975 photo; we took care of Sy Everett's testimony

2  by agreeing that we'd read a stipulation as to that photograph

3  at the time it was offered.  Do we just want to do that again?

4          MR. JOHNSON:  That's good.  Yeah, that's correct,

5  Your Honor.  You allowed Sy Everett last time, them to read

6  testimony with regard to where he got the exhibit from, where

7  he got the photograph from, but counsel and I agreed on a

8  stipulation, and they read the stipulation with regard to the

9  fact that it's a USF&G-produced photograph, and they read it

10  to the jury last time, and we're fine with that happening

11  again.  I think that obviates all of the Everett issue, then.

12          THE COURT:  Okay.

13          Will-offer, insurers.

14          MR. GROSSBART:  Your Honor, can I give you an

15  updated chart, or will that make things too complicated?

16          THE COURT:  Sure.

17          MR. GROSSBART:  We pulled some stuff (handing).

18          THE COURT:  No. 5 is admitted.

19      (Exhibit 5 was received in evidence.)

20          THE COURT:  No. 30 is admitted.

21      (Exhibit 30 was received in evidence.)

22          THE COURT:  No. 55, there is an objection.

23          MR. LYNCH:  Your Honor, this was a photograph that

24  Dick Colver had marked up and made notations on during his

25  deposition in this case.  He'll be testifying live, so his

1  prior statements would be obviously hearsay.  If they want,

2  they can use this to impeach him.

3          MR. GROSSBART:  That would be the only use of the

4  document.  If Mr. Colver shows up, the only possible use of

5  the document would be impeachment.  If he doesn't show up,

6  it's a different story.

7          THE COURT:  I'll reserve it.

8          98, tank unloading procedures with handwritten note,

9  what's the objection there?

10          MR. LYNCH:  I believe this, again, is a marked-up

11  deposition exhibit, Your Honor.

12          THE COURT:  In Colver?

13          MR. LYNCH:  I don't know who the deponent was on

14  this one.

15          THE COURT:  I'll reserve on it.

16          353, 362, 366 are admitted.

17      (Exhibits 353, 362, and 366 were received in evidence.)

18          MR. GROSSBART:  I think we have a stipulation as to

19  371 or its equivalent, do we not?

20          MR. LYNCH:  Actually 371, John, I think is one that

21  a witness marked up during their depositions, so again it

22  would be -- but I don't know the witness.

23          THE COURT:  I'll just reserve on it.

24          433, 436 are admitted.

25      (Exhibits 433 and 436 were received in evidence.)

1          THE COURT:  755, hearsay.

2          MR. LYNCH:  For this one, Your Honor, it's also as I

3    believe we talked earlier; after the original notice letter, I

4    think this is just further correspondence between the

5    insurance company and Soco.

6          MR. JOHNSON:  I agree, Your Honor.  I think this is

7    probably a Phase 2 issue.

8          THE COURT:  Well, I will just refuse it in this one.

9          784 is admitted.

10      (Exhibit 784 was received in evidence.)

11          THE COURT:  785 is admitted.

12      (Exhibit 785 was received in evidence.)

13          THE COURT:  856.

14          MR. GROSSBART:  Your Honor, 856 and 856A are the

15    same documents for the most part.  They were both produced to

16    us by Soco in this case, but the pages are a little different,

17    which is why we marked both of them.  My own personal view is

18    I think 856A is the more complete document, but there are a

19    couple of pages in 856 that don't match up with 856A, so we

20    need to have them both in the event that issue comes up, but

21    they deal -- they're 98.9 percent the same document.

22          THE COURT:  Well, I am going to reserve on 856.

23          I will admit 856A.

24      (Exhibit 856A was received in evidence.)

25          THE COURT:  I will admit 859, 2545.

1          (Exhibits 859 and 2545 were received in evidence.)

2               THE COURT:  2551, I'm not admitting expert reports.

3               MR. GROSSBART:  Well, your Honor, this was, I

4    believe, admitted last time.  Mr. Sullivan is coming in as a

5    fact witness.

6               MR. DAVIS:  Supposedly.

7               MR. GROSSBART:  And he has made statements in his

8    work in other cases, not this case, in other cases that, I

9    think, will constitute admissions against Soco's interest, and

10   that's why it's listed.  I may be mistaken about it being

11   admitted or not.

12              THE COURT:  Yeah, it was admitted the last time.  It

13   wasn't objected to previously.

14              MR. GROSSBART:  Okay.

15              MR. LYNCH:  The objection, Your Honor, also goes to

16   Soco, as you know, had put in or sought to make reference to

17   some of the insurance company's prior experts in this case who

18   likewise submitted reports.  Mr. Sullivan's expert report was

19   never anything -- he never testified in this case or in the

20   case he submitted the report in.

21              MR. GROSSBART:  That's not analogous at all.  The

22   prior insurance company experts are not coming into court.

23   Mr. Sullivan is going to take the witness stand in this court

24   in this case and say stuff that contradicts what he has said,

25   albeit as a paid expert, in other situations.  I think that's

1    fair game.

2              MR. LYNCH:  Your Honor, we have no objection to them

3    impeaching with it.

4              THE COURT:  I do, too.  But the question is, Do I

5    admit it into evidence?  I mean, you can impeach him with it.

6    You can --

7              MR. GROSSBART:  I can live with impeachment.

8              THE COURT:  Well, no.  I mean, you can beat him to

9    death with it if it's that good, or --

10             MR. GROSSBART:  Yeah.  I will go with the

11   beat-him-to-death option.

12             THE COURT:  Well, to be impeachment, it doesn't have

13   to go into evidence for the jury.  I mean, you're going to

14   read it to him.  You can show it to the jury.

15             MR. GROSSBART:  I can display it.

16             THE COURT:  Sure.

17             MR. GROSSBART:  Sure.  That will work.

18        (Discussion off the record.)

19             THE COURT:  2553.

20             MR. GROSSBART:  I would venture to say this was

21   likely admitted the last time, too.  I think this is an

22   official 104(e) request from the EPA to Soco.

23             THE COURT:  We couldn't find it, if it was.

24             MR. LYNCH:  Your Honor, I believe 2553 and 2554 are

25   actually duplicative of ones on Soco's list, and that was our

1   primary objection.  They might not be complete copies of it.

2        MR. GROSSBART:  Well, clearly, we can work that out.

3   If they're duplicative of what's on Soco's list, then we don't

4   need them.  That's obviously the case.

5        THE COURT:  Yeah, I'm going to reserve.  You guys

6   figure it out.

7        2556, is that the same?

8        MR. GROSSBART:  That's been removed as duplicative

9   already.  I think there's a note on there, so you can just --

10        THE COURT:  Okay.  It's out.  It's withdrawn, right?

11        MR. JOHNSON:  Correct.

12        MR. GROSSBART:  Yes.

13        THE COURT:  2557.

14        MR. GROSSBART:  Removed as duplicative.

15        THE COURT:  Okay.  It's gone.

16        3407 is admitted.

17      (Exhibit 3407 was received in evidence.)

18        THE COURT:  3438 is admitted.

19      (Exhibit 3438 was received in evidence.)

20        THE COURT:  4005.

21        MR. GROSSBART:  We will abide by your prior,

22   obviously, your prior statements about how to deal with

23   discovery.

24        THE COURT:  Yeah.

25        4026.  It wasn't offered; at least as far as we

1   could find, it wasn't admitted the last time.

2           MR. WALSH:  I believe this goes to the only disputed

3   issue as to whether the last Continental excess policy was

4   extended for ten weeks.  It may not come up in Phase 1.

5           MR. BANKER:  My view is that would be a Phase 2

6   issue, Your Honor.

7           THE COURT:  Well, I will reserve on it, but probably

8   it won't go in if it's Phase 2.

9           4027.

10          MR. LYNCH:  Your Honor, Mr. Marvin Johnson is going

11  to be appearing and testifying live in this case.  This is a

12  document he marked up during his prior deposition, again.

13  It's hearsay.  It can be used to impeach him.

14          MR. GROSSBART:  I would say the same situation as

15  Mr. Colver.  If Mr. Johnson is here and available, it's

16  impeachment, if it's anything at all.  If he's not, it's going

17  to be part of his testimony because it attaches to the

18  deposition.

19          THE COURT:  Yeah.

20          MR. LYNCH:  We hear that.

21          THE COURT:  I'll reserve on that.

22          4044 is admitted.

23       (Exhibit 4044 was received in evidence.)

24          THE COURT:  4143, is that the same thing, and 4144?

25          MR. LYNCH:  4143 and 4144, the insurance companies

1   have designated and indicated they're going to call Mr. Kjos

2   via his deposition.  If they do that, we have no problems with

3   them coming in when his deposition comes in.  We would object

4   to them coming in if, you know, for some reason, they don't

5   put in his deposition.

6            MR. GROSSBART:  That's fine.  We agree with that.

7            THE COURT:  Yeah.  Okay.  I'll just reserve on them.

8            4319.

9            MR. GROSSBART:  That would be in the expert

10  demonstrative category that we talked about earlier.

11           THE COURT:  4320 is admitted.

12      (Exhibit 4320 was received in evidence.)

13           THE COURT:  4321 and 4322 are admitted.

14           MR. GROSSBART:  Those were actually removed as

15  duplicative.

16           THE COURT:  Oh.

17           MR. GROSSBART:  So you can --

18           THE COURT:  I withdraw those two.

19           MR. GROSSBART:  Withdraw, yes.

20           THE COURT:  And same?  You're withdrawing 4323 --

21           MR. GROSSBART:  Looks like the whole list --

22           THE COURT:  -- 24, 25 --

23           MR. GROSSBART:  The whole next page.

24      (Discussion off the record.)

25           THE COURT:  -- down to 4332, 4333, down to 4338,

63

1   they're all withdrawn, right?

2          MR. GROSSBART:  Yes.  Yes.

3          THE COURT:  4339.

4          MR. GROSSBART:  That's a demonstrative, in that

5   category.

6          THE COURT:  I'll reserve.

7          Same with 4340.

8          MR. JOHNSON:  The whole next page, Your Honor, are

9   all figures attached to an expert report.

10          THE COURT:  4339 through 4352, I'll reserve on them.

11          4353, I'll reserve, too.

12          4822 is admitted.

13      (Exhibit 4822 was received in evidence.)

14          THE COURT:  4823, I'll reserve.

15          What else do we need?

16          MR. COZZENS:  Your Honor, I have a -- are we through

17   with exhibits?

18          MR. DAVIS:  Larry, we couldn't hear you.

19          THE COURT:  Let's take five minutes here.

20      (Recess taken from 11:22:34 to 11:31:42.)

21      (Open court.)

22          THE COURT:  All right.  What else do we need to

23   cover on exhibits here?

24          MR. JOHNSON:  I think that we covered the exhibits,

25   Your Honor, sufficiently.

1        I have got a couple of housekeeping matters

2   additionally.

3        Just with regard to pending motions, we did talk

4   about the insureds' brief in support of its objections to the

5   Lockheed Martin report, but there is also Soco's motion

6   relating to Mr. Elden Dickinson which is fully briefed and

7   pending in front of Your Honor, and there's also Soco's motion

8   for judgment as a matter of law and duty to defend, which is

9   also fully briefed, the duty to defend with regard to the

10  *Burbank* case.  The duty-to-defend issues, I don't know that

11  they have to be resolved.  They're all before the trial.

12       THE COURT:  I don't think they do.

13       MR. JOHNSON:  We would ask, Your Honor, obviously,

14  to have witness sequestration except for the experts.  The

15  experts can and should sit through the whole trial, we

16  believe.

17       THE COURT:  Yeah, the motion has been made, and it

18  is granted.  Witnesses are excluded.

19       MR. JOHNSON:  Thank you, Your Honor.

20       MR. DAVIS:  But --

21       MR. JOHNSON:  But experts can attend?

22       THE COURT:  Well, of course.

23       MR. JOHNSON:  With regard to the final pretrial

24  order, there is a stipulation related to employment dates,

25  and, in particular, there was a stipulation that was entered

1    into with regard to Marvin Johnson's employment dates.  He's

2    the person that was the subject of a prior motion.  He lives

3    in Billings.  They've subpoenaed here, as have we.  We

4    understand they intend to call him.

5            We discovered evidence that we think indicates that

6    his initial date of employment, which we had stipulated to as

7    being 1980 or '81, was likely 1979, and, if we could, we'd

8    just like to -- it's just a year, but it relates to historical

9    photography and what he's seeing, so we'd like to withdraw

10   that stipulation if we can.  I don't think there's any

11   prejudice at all to the other side if we were to withdraw

12   that.

13           MR. COZZENS:  Marvin Johnson will be here.  We don't

14   object to that.

15           THE COURT:  Yeah.  We want to --

16           MR. JOHNSON:  Thank you, Your Honor.

17           THE COURT:  -- get it right.  Stipulations to facts

18   that are not accurate the second go-round, we'll change it.

19           MR. JOHNSON:  Thank you, Your Honor.

20           With regard to the opening statements, we understand

21   that each side will get 45 minutes.  There is an issue with

22   regard to -- there may be two or three demonstratives that

23   we'd like to use during our opening.

24           THE COURT:  Can you agree to them?

25           MR. JOHNSON:  We exchanged demonstratives last

1   night, Your Honor, so we can talk to the other side about what

2   we'd like to use, and if they want to use stuff, too, that's

3   fine.  And if we can't come to an agreement, maybe, at the

4   beginning of the trial, before we make opening argument we

5   could plead our cause if indeed they don't want us to use

6   them.

7           THE COURT:  Yeah, let's handle it that way.  If you

8   can agree, I don't have any problem at all.  If you can't, I

9   still may let you.  You ought to be able to agree, I mean, if

10  they're exhibits that are going to be used during the trial.

11          MR. DAVIS:  Well, they're more some summaries of

12  evidence, Judge, that we think are important and they probably

13  think are not as important, and, therefore, we're anticipating

14  that there may not be agreement.  But, again, with the limited

15  time for openings, we think it would be helpful to have our

16  position summarized, even if they don't like it.  That's,

17  again --

18          THE COURT:  Yeah.  It may very well be that I will

19  do that.

20          One of the things I was thinking about, getting back

21  into this case, was you all might consider something I can

22  tell the jury to give them a road map as to the issues that

23  they need to resolve.  And I think it would probably be -- it

24  would go along the lines of the special verdict form that

25  they're going to get.  I want this jury -- and I know there's

1   some, and I haven't really read them, but documents filed

2   concerning proposed special verdicts and that sort of thing.

3   I'm sure I'll get to them tomorrow afternoon, but I'd like to

4   be in a position to be able to tell this jury, at the time

5   this case starts, that, in essence, these are the issues they

6   need to be focusing on while they hear the evidence.

7       MR. JOHNSON:  We can sit down with opposing counsel

8   and see if we can work out something that's an addendum, in

9   fact, along those lines to the statement that you previously

10  made about what this case is all about, that you gave to the

11  prior jury.

12      THE COURT:  Yeah.  It will help.  At least I think

13  it will.  It can't hurt in a case that's going to take this

14  long.

15      I was talking -- Max was telling me during the break

16  there that they just got done trying a case with a state judge

17  who gave them so many hours, allocated the hours and kept the

18  timers going.  I don't want to have to do that, but I want

19  this thing done by the Thursday, nine days.  Now I've got a

20  doctor's appointment March 18, but that isn't going to take

21  very long.  So I'll be gone a little on March 18.

22      I think this case will go -- I'm not going to sit

23  here and listen to repetition.  If somebody is getting

24  repetitious and there is no objection, I will just stop you

25  and say it's repetitious.

1          MR. JOHNSON:  Your Honor, one of the other

2    housekeeping issues is we had objected to some of the

3    witnesses whose depositions they want to read.  These are

4    USF&G current or former employees.  Your Honor ruled on this

5    last time, and we talked about it and explained our position

6    in our trial brief.  I don't know that we need to argue the

7    merits or demerits of the various, all sides' issues on these,

8    but I wanted to point out to Your Honor that we did brief

9    those issues in the trial briefs to bring them to your

10   attention.

11         THE COURT:  I haven't read it yet.  Are there lots

12   of objections?

13         MR. JOHNSON:  No.  It's pretty simple, Your Honor,

14   and basically we're asking you to abide by your rulings from

15   last time.

16         THE COURT:  That's what I intend to do.  I don't

17   want to have to rule again on this stuff.

18         MR. JOHNSON:  And I think that, I think that takes

19   care of -- you know, obviously we've also got page and line

20   objections, both sides do, to certain depositions that will

21   need to be ruled on, and I'm sure your clerk is hard at work

22   on that.

23         THE COURT:  Yeah.  That's one of the exercises that

24   he loves to engage in.

25         MR. JOHNSON:  Yeah, I'm sure he does.  I'm sure he

1    loves it.

2           And other than that, I don't think we have any other

3    housekeeping issues on our side, Your Honor.

4           MR. MICKELSON:  The exhibit books, Your Honor, do

5    you want those delivered to you today, or do you want those

6    Monday morning, or --

7           THE COURT:  Whatever is easiest for you all.

8           MR. JOHNSON:  We could deliver them, I think,

9    tomorrow.  We have been talking about bringing stuff over here

10   tomorrow afternoon, and I think we could do that tomorrow as

11   well.

12          THE COURT:  Yeah.  That's plenty good.

13          MR. MICKELSON:  Okay.

14          THE COURT:  Mr. Lynch, Mr. Cozzens, do you have

15   anything?

16          MR. COZZENS:  A couple things.

17          First is that Marvin Johnson, who will be here, has

18   a serious medical condition, throat cancer, that causes two

19   things.  One is that he can only talk for about 20 minutes and

20   he needs to go irrigate his throat.  He's asked me if he could

21   bring bottled water in to do that.

22          THE COURT:  Oh, yeah.

23          MR. COZZENS:  Okay.  And we may have to ask -- he

24   doesn't like to do that in public, so we may have to ask for a

25   short recess after about 20 minutes or so.

1           THE COURT:  How many recesses do you think we'll

2    need for him?

3           MR. COZZENS:  For my testimony, I hope not even one,

4    but maybe one.

5           MR. JOHNSON:  Your Honor, I anticipate, if they're

6    going to put Mr. Johnson on in their case, that there might be

7    an issue as to going beyond the scope of their examination if

8    it's limited to 20 minutes.  Obviously with his health

9    situation being the way it is, we don't want him to -- we

10   don't want to have to bring him back here twice, and so we

11   would be interested, in effect, in putting him on in our case

12   during cross-examination in their case.

13          THE COURT:  When you get to that point, just tell me

14   and I will tell the jury what is going on.

15          MR. JOHNSON:  Okay.

16          MR. COZZENS:  And that was the second thing I was

17   going to say.  He very much only wants to come once.  In fact,

18   I think you subpoenaed him for the 15th, and he said, "I've

19   got a doctor's appointment for the 15th."  But we'll have him

20   come in, and everybody will ask everything they need.

21          MR. JOHNSON:  What day do you intend to have him?

22          MR. COZZENS:  Probably Tuesday.

23          MR. JOHNSON:  All right.

24          MR. COZZENS:  Will you entertain questions that we

25   would like you to ask the jury on *voir dire*?

1           THE COURT:  Oh, yeah.  I want them.

2           MR. COZZENS:  We'll give them to you Friday

3   afternoon?  Is that soon enough?

4           THE COURT:  Yeah.

5           MR. COZZENS:  Okay.

6           MR. JOHNSON:  We'll do the same thing, Your Honor.

7           THE COURT:  Yeah.  Good.  Yeah, I want them.

8           MR. BANKER:  One other issue, Your Honor.  There's

9   one witness on the Soco may-call list by the name of Doug

10  Johnston, and the insurers have objected to him as a witness

11  that wasn't disclosed.  The issue there is he was disclosed on

12  the insurers' 26(a) disclosure.  We believe there has been

13  disclosure in the case, and the question is, Will we be able

14  to call him as a witness if we want to?

15          THE COURT:  I'll worry about it if you want to.

16          MR. BANKER:  Okay.

17          THE COURT:  Shall we call this thing good?

18          MR. COZZENS:  We're good.

19          MR. JOHNSON:  Good-bye, Your Honor.  Thank you for

20  your time.

21          THE COURT:  Thank you.  Oh, no, no.  I'm here as a

22  public servant.

23          MR. DAVIS:  What time do you want us here Monday

24  morning?

25          THE COURT:  Five.

1              MR. DAVIS:  What time can we get in the building?

2              THE COURT:  The jury will be here at 8.  Oh, a

3    quarter after 8 or so, 20 after.  I don't care.

4              MR. DAVIS:  Okay.

5              THE COURT:  Thanks, gentlemen.

6         (Counsel respond.)

7              THE COURT:  And don't take the rest of the day off.

8    Go back and try to settle this case.

9         (Proceedings were concluded at 11:43:29.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      REPORTER'S CERTIFICATE

 2          I, JoAnn Corson Bacheller, a Registered Diplomate

 3   Reporter and Certified Realtime Reporter, certify that the

 4   foregoing transcript is a true and correct record of the

 5   proceedings given at the time and place hereinbefore

 6   mentioned; that the proceedings were reported by me in machine

 7   shorthand and thereafter reduced to typewriting using

 8   computer-assisted transcription; that after being reduced to

 9   typewriting, a certified copy of this transcript will be filed

10   electronically with the Court.

11          I further certify that I am not attorney for, nor

12   employed by, nor related to any of the parties or attorneys to

13   this action, nor financially interested in this action.

14          IN WITNESS WHEREOF, I have set my hand at Billings,

15   Montana this 27th day of April, 2010.

16

17                              /s/ JoAnn Corson Bacheller

18                              _____
                                JoAnn Corson Bacheller
19                              United States Court Reporter

20

21

22

23

24

25
```