UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) | |
| Plaintiff, | ) ) | CV-04-29-BLG-RFC |
| v. | ) ) | CV-08-29-BLG-RFC |
| CONTINENTAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Intervenor, | ) ) | ORDER DENYING THE INSURERS'S MOTIONS |
| SOCO WEST, INC., | ) ) | FOR SUMMARY JUDGMENT RE: PRO RATA ALLOCATION |
| Defendant. | ) ) | |

## I.  INTRODUCTION

Pending before the Court are two more motions concerning the Insurers's (USF&G and Continental) duty to pay Soco West's defense costs for lawsuits and governmental claims arising out of environmental contamination at Soco West's Lockwood, Montana facility.  Although it is settled that the Insurers were obligated to defend Soco West against these claims until the jury concluded there was no coverage (*Docs. 372, 538, 544, & 546*), the Insurers have now filed motions for partial summary judgment declaring they have no duty to make further defense cost

1

payments because they have already paid more than their pro rata share of defense costs.  (*Doc. 565-Continental; Doc. 576-USF&G*).  Specifically, the Insurers ask this Court to (1) allocate Soco West's defense costs on a pro rata/time on risk basis over the entire period of contamination and (2) declare they have no further obligation to pay defense costs because they have already paid more than their pro rata share.   Regardless, a thorough review of the cases cited by the Insurers reveals that even the courts that pro rate defense costs among consecutive insurers do not allocate defense costs to an insured unless the insured chose not to purchase insurance or is unable to prove it was insured.  Accordingly, since Soco West's predecessors purchased pollution coverage for every year they were able, the Insurers's motions must be denied.

## II.   FACTUAL BACKGROUND

The material facts are not in dispute.  From 1972 until recently, Soco West's predecessors[1] operated a chemical storage and distribution facility in Lockwood, Montana.  That facility sold perchloroethylene ("perc") and other chemicals.  In 1999, an investigation by the U.S. Environmental Protection Agency and the Montana Department of Environmental Quality discovered perc and other chemicals in the groundwater underlying Lockwood.  The EPA/MDEQ determined Soco West

---

[1]Throughout this Order, Soco West and its predecessors are referred to as Soco West.

was responsible for the contamination and made a claim against Soco West for cleanup costs. In addition, civil lawsuits seeking damages for property damage and personal injury caused by perc contamination were filed against Soco West in 2000 and 2005. Although it is not known when the contamination first occurred, it is undisputed that it has been ongoing for a long time and property damage continues to this day.

Soco West sought insurance coverage for the governmental claims and the civil lawsuits from USF&G, which issued policies from 1972 to 1982[2] and Continental, which issued primary policies from 1982 through 1985. Although Soco West remained insured after 1985, by that time insurers had implemented the absolute pollution exclusion precluding any insurance coverage for environmental contamination.

The Insurers subsequently agreed to defend Soco West against all the claims subject to a reservation of rights, with USF&G agreeing to pay 75% and Continental agreeing to pay 25% of Soco West's defense costs. The Insurers then filed the instant actions seeking a declaratory judgment that they had no duty to defend Soco West for claims arising out of perc contamination at Lockwood. After two trials

---

[2]Consistent with its theory that the perc contamination was caused by an undocumented sudden and accidental spill sometime in the mid-1970's, Soco West has withdrawn its claim for coverage under any USF&G policy issued prior to the 1st of January 1978.

and one appeal, Phase I of these proceedings determined that the Insurers have no duty to indemnify Soco West because there was no sudden and accidental spill of perc to defeat the policies' pollution exclusion, but that because there was a potential for coverage, the Insurers still had a duty to defend Soco West against the claims until the jury determined there was no coverage.  Phase II, among other things, will determine how much the Insurers owe Soco West in defense costs.

Consistent with the standard form CGL policies of the time, all of the relevant policies require the Insurers to pay on behalf of Soco West all sums Soco West becomes legally obligated to pay as damages because of bodily injury or property damage, to which the insurance applies, caused by an occurrence.  "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  In all but two of the policies, the definitions of bodily injury and property damage require that they occur during the policy period. With respect to the other two policies, both issued by USF&G, USF&G argues that bodily injury and property damage are limited to that occurring during the policy period through the incorporation of the definition of occurrence.  Finally, the policies impose upon the Insurers a "duty to defend any suit against the insured on account of such bodily injury or property damage."

4

**III.   ANALYSIS**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  Since the material facts are undisputed and the interpretation of an insurance contract is a question of law, *Modroo v. Nationwide Mut. Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008), the issue raised by the Insurers's motions are appropriate for summary judgment.

Courts across the country have taken several approaches in allocating defense costs among consecutive insurers.  Because neither the Montana Supreme Court nor the Ninth Circuit Court of appeals has addressed the issue, this federal court exercising diversity jurisdiction must make a reasonable determination of the result the Montana Supreme Court would reach if it were deciding the case.  *Medical Laboratory Mgmt. Consultants v. American Broad. Companies, Inc.,* 306 F.3d 806, 812 (9th Cir.2002).  In determining how the Montana Supreme Court would rule, this Court must rely on persuasive authorities, such as treatises and decisions from other jurisdictions, as guidance.  *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir.1996).

Although there are variations, the two primary methods of allocating defense costs among consecutive insurers are the pro rata method and the joint and several method: "[u]nder the pro rata method, the insured is liable for costs attributable to losses occurring during periods when it was uninsured, while under the joint and several method, all costs are allocated among insurers." *Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.,* 826 A.3d 107, 116-117 (Conn. 2003). Under either method, there will be allocation among the insurance companies on the risk; the difference lies in how they treat periods of self-insurance. *Id.* at 117; J. Stephen Berry & Jerry B. McNally, *Allocation of Insurance Coverage: Prevailing Theories and Practical Applications,* 42 Tort Trial & Ins. Prac. L.J. 999, 1010 (Summer 2007). Joint and several allocation is much more common as to the duty to defend than the duty to indemnify: while a minority of jurisdictions allocate defense costs to the insured for uninsured periods, a majority hold that when multiple insurers with successive policy periods have a duty to defend, each insurer is severally liable to the insured for the entire cost of the defense. Berry & McNally, 42 Tort Trial & Ins. Prac. L.J. at 1008.

The justification for allocating a portion of the defense costs to the insured is that the insured chose not to purchase insurance coverage that would otherwise have been available to provide benefits, and instead elected to bear the risk for those

6

years itself.  Allan D. Windt, *Allocation of Defense Costs Among Consecutive Insurers*, § 4.45 Insurance Claims & Disputes: Representation of Insurance Companies & Insureds (March 2010).  *Security Ins. Co. of Hartford,* a case cited by the Insurers in support of their argument for pro-rata allocation, confirms this:

> we conclude that, in long latency loss claims that implicate multiple insurance policies, *the pro rata method of allocating defense costs applies for purposes of allocating costs to the insured for periods during which it was uninsured or has "lost or destroyed its policies"* and, therefore, affirm the trial court's judgment on count three of the complaint.

*Security Ins. Co. of Hartford*, 826 A.2d at 127 (emphasis added).  In affirming the trial court's judgment on count three, the court held that the insured should be forced to pay a share of defense costs pro rated for the years in which no insurer was identified or for which the Insured lost or destroyed its policies and the alleged insurer has refused coverage.[3]  *Id.*  The court also affirmed the trial court's allocation of defense costs to the insured for a period where the insured had coverage, but had subsequently entered into an agreement with the insurer releasing it of any obligation under the policies in exchange for a cash payment.  *Id.*  Through these holdings, the Connecticut Supreme Court affirmed the district court's method of pro rating the insured's defense costs: the insured must pay a portion of defense

---

[3]In this case, while Soco West has apparently lost or destroyed some of the relevant policies, the parties have stipulated as to the terms and existence of those policies.

costs represented by a fraction with a denominator equal to the number of years of the injury up to 1985 and the number of years the insured was uninsured. *Security Ins. Co. of Hartford*, 826 A.2d at 114, n.13. Significantly, the insured was not on the hook for any period after 1985, even though the asbestos-related injury continued to occur past that date, since that was the year the insurance industry first implemented the absolute pollution exclusion, which precluded any coverage for pollution or toxic contamination. *Id., citing Stonewall Ins. Co. v. Asbestos Claims Management Corp.,* 73 F.3d 1178, 1203-04 (2d Cir. 1995) (noting that "judges who have endorsed proration-to-the-insured have done so only to oblige a manufacturer to accept a proportionate share of a risk that it elected to assume, either by declining to purchase available insurance or by purchasing what turned out to be an insufficient amount of insurance" and declining to prorate to the insured years during which pollution insurance was unavailable due to the absolute pollution exclusion).[4]

Here, there is no basis to allocate defense costs to Soco West because Soco

---

[4] In the first seminal case allocating defense costs to an insured for periods in which the insured was uninsured, the court did not consider the effect of the absolute pollution exclusion on the allocation calculation because the case was decided in 1980, five years prior to the absolute pollution exclusion. *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224-25 (6th Cir.1980), *clarified*, 657 F.2d 814, 816 (6th Cir.), *cert. denied*, 454 U.S. 1109 (1981).

West's predecessors purchased liability insurance for environmental contamination for every year in which they were able, until 1985 when the insurance industry implemented the absolute pollution exclusion. Although it is likely that the Montana Supreme Court would follow the majority trend and adopt joint and several liability for defense costs since (1) the plain language of the policies require the Insurers to defend "any suit" seeking damages for property damage, even if the suit is groundless, false, and fraudulent, and (2) the duty to defend is so broad under Montana law, there is no need to decide the issue in this case. The Insurers have asked the Court to declare they have no duty to pay further defense costs because, after allocating defense costs to Soco West for the years in which pollution insurance was unavailable, they have paid more than their pro rata share. Since they have presented no authority (1) for the allocation of defense costs to Soco West under the facts of this case or (2) for the proposition that defense costs should be allocated on a pro rata basis over the entire period of contamination, their motions must be denied.

    **SO ORDERED**.

    Dated this 18th day of October, 2010.

    _/s/ Richard F. Cebull_____
    Richard F. Cebull
    United States District Court