IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND, GUARANTY COMPANY, | ) ) ) | CV 04-29-BLG-RFC |
| Plaintiff, | ) | |
| and | ) | |
| | ) | ORDER GRANTING MOTION |
| CONTINENTAL INSURANCE CO., | ) | TO ENFORCE SETTLEMENT |
| | ) | AGREEMENT |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SOCO WEST, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| UNITED STATES FIDELITY AND, GUARANTY COMPANY and , CONTINENTAL INSURANCE CO. | ) ) ) | CV 08-29-BLG-RFC |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| SOCO WEST, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

On the Friday before the Phase Two trial in this marathon coverage dispute,

the Court was notified that a settlement had been reached.  The Court responded

1

by vacating the trial, terminating all pending motions, and ordering the parties to file a stipulation for dismissal within thirty days.  *Doc. 730.*

Considering the history of this case, the Court was not at all surprised to learn a couple weeks later that the parties were unable to meet the deadline for dismissal because Soco West refused to sign the settlement agreement, claiming the release was too broad.  The Insurers, believing the settlement was consummated on December 3, 2010, when the parties' principals reached a "settlement in principle," or at the latest on December 20, 2010, when Soco West's counsel indicated that the language in the settlement agreement was "acceptable to Soco, and Soco will execute it in this form," have moved the Court to enforce the settlement.  *Doc. 731.*  Soco West claims there has been no settlement and opposes the motion.  For the following reasons, the Insurers' motion must be granted.

## II.   FACTUAL BACKGROUND

In anticipation of the December 6, 2010 trial date for the Phase Two claims, counsel commenced settlement negotiations on November 19, 2010.  By December 2, negotiations had stalled and the principals began negotiating amongst themselves.  Susan Buckingham, Managing Counsel for the Travelers Indemnity Company, negotiated for the Insurers, while Raj Mehta, President of Soco West, negotiated on behalf of Soco West.

2

On the afternoon of December 3, 2010, Mr. Mehta sent Ms. Buckingham an email containing the material terms of the settlement agreement, including the provision that "'Soco' will be **defined for purposes relating to the release only as**: "'Soco' means Soco West, Inc., Dyce Chemical, Inc., Dyce Sales and Engineering Service Company, and Brenntag West, Inc., and (i) each of their direct and indirect past and present parents, subsidiaries, divisions, affiliates, partners, and join ventures ..." *Ex. A to Doc. 733,* Aff. Robert Johnson (Dec. 30, 2010) (emphasis in original).  The language in bold identifies the changes Soco made to the Insurers' proposed agreement.  *Id.*  The email further provided that "Soco (as broadly defined above), USF&G and Continental, as respectively defined, will release one another from any and all claims arising from or relating in any way to (1) the Site (as defined); the Actions, including without limitations the claims and counterclaims asserted therein; and (3) any alleged wrongdoing or misconduct of any kind, including bad faith, by the USF&G and Continental."  *Id.* Buckingham responded that "[t]he Insurers accept your changes as set forth below. Therefore, the Insurers and Soco have reached a settlement in principle*.*"  *Id.* Mehta responded by thanking Buckingham for her efforts in resolving the matter. *Id.*  The parties then advised the Court of the settlement and the Court vacated the trial and ordered the parties to file a stipulation for dismissal by January 3, 2011.

Significantly, the Court has been presented with no evidence that either party manifested an intent to be bound only upon the execution of a written agreement.

Over the next couple weeks, the parties held numerous telephone conferences and exchanged drafts of a written settlement agreement.  On December 20, 2010, Robert Johnson, outside counsel for USF&G sent Paul Banker, outside counsel for Soco West, an email with a copy of a settlement agreement attached, asking Banker if his client "will sign this version of the agreement today, or at the latest, tomorrow" so that payment could be made that week.  The agreement sent by Johnson to Banker defined "Soco" as its direct and indirect, past and present, parents, subsidiaries, divisions, affiliates, partners, and joint ventures.  *Ex. B to Doc. 133.*  Banker responded to Johnson's email, stating "This language is acceptable to Soco, and Soco will execute it in this form."  *Id.* Banker avers that "it appeared to Soco West that the most recent changes to the settlement agreement draft had resolved the remaining disputes, and I conveyed this belief to counsel for the Insurers."  *Doc. 736,* Aff. of Paul Banker, ¶ 10 (Jan. 13, 2011).

USF&G and Continental responded by signing the Agreement, but Mr. Mehta was unavailable to sign for Soco West until December 22, 2010.  On December 22, Banker sent the Insurers' outside counsel an email stating that

4

"Soco has some issues" that he was working to resolve.  Soon thereafter, Banker

sent a more detailed email stating that Soco's in-house counsel sought to amend

the release provision out of concern for "the potential application of the agreement

to a Berkshire[1] affiliate that they don't have authority to provide a site release for,

except as it relates to Soco West."  *Ex. D. to Doc. 733*.  Banker further claimed

that the "interaction of the policy definition and the release and the Soco rep &

warranty doesn't work."  *Id.*  Primarily, Soco sought to change the release

provision from releasing the Insurers from any claims relating to the Lockwood

"Site" to releasing the Insurers from any claims relating to "Soco West's activity

or liability for the Site."  *Id.*

     Outside counsel for the parties then spoke by telephone.  The Insurers

related their position verbally and through emails by Mr. Grossbart and Mr. Crane

that the parties already had an agreement, with all the terms set forth and accepted

in writing, and that accepting the changes would saddle the Insurers with potential

liability for a Site-related Claim involving Soco affiliates, which the Insurers had

already won release from through lengthy negotiations.  *Ex. E. to Doc. 733*.  The

next day, Soco refused the Insurers' demand that Soco sign the written settlement

---

[1]Soco West, Inc. is owned by Berkshire Hathaway, Inc.

5

agreement.  The Insurers filed the instant motion one week later.

**III.   ANALYSIS**

"Federal courts interpret settlement agreements according to the principles of contract law in the state where the action arose."  *Montana Homes LLC v. BNSF Ry. Co.,* 287 Fed.Appx. 596, 597 (9th Cir. 2008).  "Under Montana law, a settlement 'agreement is binding if made by an unconditional offer, and accepted unconditionally.'" *Id., quoting Hetherington v. Ford Motor Co.,* 849 P.2d 1039, 1042 (1993).  Alternatively stated, "a party to a settlement agreement is bound if he or she has manifested assent to the agreement's terms and has not manifested an intent not to be bound by that assent." *Id., quoting  Lockhead v. Weinstein*, 81 P.3d 1284, 1287 (2003).  The Insurers argue the settlement agreement became enforceable on December 20, 2010 at the latest, when Banker responded that the "language is acceptable to Soco, and Soco will execute it in this form."

From the outset, it is noted that there is no claim, and the facts would not support such a claim, that the parties intended only to be bound upon the execution of a written agreement.  *See Callie v. Near,* 829 F.2d 888, 890-91 (9th Cir. 1987).   Rather, Soco West argues this Court cannot enforce the settlement agreement because its terms were in dispute, citing *Hinderman v. Krivor*,  244 P.3d 306, 310 (Mont. 2010).  Specifically, Soco West claims the parties were

6

mutually mistaken about the scope of the release and that the release is a legal impossibility.

Soco is correct that there is no settlement agreement if, when the parties entered into it, they were mutually mistaken regarding a fact that was material to the agreement. *Gamble v. Sears,* 160 P.3d 537, 543 (Mont. 2007). A "mutual mistake regarding a material fact is a mistake that is so substantial and fundamental as to defeat the object of the parties in making the contract." *Gamble,* 160 P.3d at 543-44. Soco argues it intended only to release its claims against the Insurers that arise from or relate in any way to this litigation and/or Soco West's activities at the Lockwood Site, and to bind Soco West's affiliates and anyone else to the extent they could claim rights through Soco West or the insurance policies issued to Soco West, but that it does not have the power to bind Soco West's affiliates to obligations unrelated to Soco West. In sum, Soco claims the Insurers were mistaken that Mehta had the authority to bind all Soco's affiliates for all claims against the Insurers arising out of the Lockwood Site and Soco was mistaken in its belief that the Insurers knew Mehta could only speak for Soco and could not bind Soco's affiliated companies.

In support of its mutual mistake argument, Soco relies on an affidavit from Raj Mehta, the president of Soco West who negotiated the settlement on its behalf

on December 2 and 3, 2010.[2]   Mehta avers he never told anyone he had authority to act for any Soco West affiliate besides Soco West and that due to the corporate structure of the Berkshire Hathaway family of companies, no one person would have authority to bind all those entities.  *Doc. 737*, Aff. of Raj Mehta, ¶ 1 3-5, and 12 (Jan. 13, 2011).

Regardless, the uncontradicted testimony from Susan Buckingham, which is buttressed by emails between the parties, makes clear there was no mutual mistake.  Buckingham avers that when negotiations began among the principals on December 2, 2010, she told Raj Mehta of Soco West that any settlement must include a release of all claims relating to the Lockwood Solvent Site that Soco West, or any of its parents or affiliates, have or may have against the Insurers. *Doc. 739,* Aff. of Susan Buckingham, ¶ 3 (Jan. 26, 2011).  Accordingly, at 3:24 p.m. on December 2, she sent Mehta an email containing a definition of Soco West for the settlement agreement that included its parents and affiliates. *Id.* at ¶ 4, *Ex. A.*  Mehta responded by email with a definition that included Soco West's affiliates, but not its parents, stating that "we can live with [his new definition of

---

[2]The Insurers have moved to strike most of Mehta's affidavit on various grounds, including, relevance, and that he lacks foundation and/or personal knowledge, is making legal conclusions, and offering impermissible lay opinions. *Doc. 740.*  No specific ruling on that motion is forthcoming.  If the testimony is cited in this Order, then the objection to that averment was overruled.

Soco] but only on the release." *Id.* After receiving this email, Buckingham called Mehta to ask why he had removed Soco's "parents" from the definition. Mehta said the word "affiliates" would include "parents as well as subsidiaries and sister companies." *Id.* Despite two affidavits filed in this case, Mehta has not averred that he told Buckingham he did not have authority to bind Soco's parents. Buckingham then told Metha there would be no settlement unless the definition of "Soco West" included the words "parents" and "affiliates." *Id.* Mehta said he would get back to her. *Id.*

Around 6:00 p.m., Mehta told Buckingham that Soco West would agree to adding the word "parents" to the definition of "Soco West" for purposes of the settlement agreement's release. *Id.* at ¶ 5. Again, there is no evidence Mehta said anything about not being able to bind Soco's parents or affiliates. At 8:00 p.m., Buckingham sent Mehta an email confirming the matters agreed to during the earlier discussions and suggesting they shorten the name of the defined term "Soco West" to "Soco" and making it clear that "Soco," meaning Soco West, its parents, and affiliates, would be releasing the Insurers of any claims relating to the Lockwood Solvent Site. *Id., Ex. B.* Buckingham's email also indicated that only Soco West–and not the broad definition of Soco West used for the release–would be responsible for indemnifying the Insurers under the settlement agreement. *Id.,*

*Ex. B.*

At just after 9:00 a.m. the next day, Mehta sent Buckingham an email containing the terms of an agreement in principle and requesting a rapid response. *Id.* at ¶ *6.* Mehta's agreement in principle (1) defined "Soco" as Soco West and its parents and affiliates for purposes of the release only and (2) expressly stated that "Soco will give the insurers a site release." *Id., Ex. C.* Mehta further stated that the broad definition of "Soco" could be applied to other terms for reasonable consideration, although only Soco West, Inc. would "provide defense or indemnification to insurers for known or existing claims." *Ex. C.* Again there is no evidence that Mehta expressed his limited authority to bind Soco's parents and affiliates.

Buckingham responded by email at 12:50 p.m., setting forth the terms of the agreement in principle, including a full site release from "Soco" as previously defined to include parents and affiliates. *Id.* at ¶ *7, Ex. D.* Mehta responded by email at 2:45 p.m. with additional terms, but Mehta made no changes to the definition of "Soco" or the terms of the release. *Id. at ¶ 8, Ex. E.* Buckingham responded by accepting the changes and stating the parties had reached a settlement in principle and that the Insurers' outside counsel would be contacting Paul Banker so they could jointly advise the Court of the settlement. *Id.* Mehta

10

concluded by thanking Buckingham for her "effort in resolving this matter." *Id.* March 15, 2011.

Although Mehta filed another affidavit in response to Buckingham's, he takes no issue with Ms. Buckingham's account of the negotiations, but merely reiterates, this time with better foundation, that neither he nor any one person has authority to bind all of Soco West's affiliates, as well as his subjective conclusion that "Soco West did not give its unconditional consent to settle on December 20, 2010." *Doc. 743,* Aff. of Raj Mehta, ¶¶ 6-9. Similarly, Mehta's prior affidavit does not contradict Buckingham's version of the events, which are confirmed by the emails, but rather states his subjective belief that the parties were mutually mistaken, that the release is a legal impossibility, and that there was never an unconditional agreement to settle. *Doc. 737.* It has long been established that the unexpressed subjective intent of a party to a contract is irrelevant to the interpretation of the contract. *Energy Oils, Inc. v. Montana Power Co.,* 626 F.2d 731, 737 n.11 (9th Cir. 1980). Similarly, witnesses may not testify as to the legal effect of a contract. *Id.*

As the foregoing facts demonstrate, there was no mistake–and certainly no mutual mistake. Even if Mehta or Banker failed to understand the scope of the release, which is very unlikely considering the record of the settlement

negotiations, the misunderstanding was not due to any misrepresentations by the Insurers. *Quinn v. Briggs,* 565 P.2d 297, 302 (Mont. 1977). Soco West knew, or should have known, from the beginning that the Insurers were bargaining for a complete release of any liability relating to the Lockwood Solvent Site. Indeed, why would the Insurers settle for anything less considering what was left of Soco's case after numerous Court rulings against Soco.

Nor is the Court unable to enforce the settlement on the grounds of "legal impossibility" due to Mehta or Soco West's inability to bind affiliates. Even if Mehta has no authority to bind all Soco West's affiliated companies on his own, there is no reason he could not have obtained such authority prior to negotiating a release in which he bound all affiliates. Moreover, by enforcing the agreement the parties themselves agreed to, the Court is not exercising jurisdiction over non-parties. If a dispute later arises concerning whether a Soco affiliate's claim related to the Lockwood Site has been released, the issue can be litigated at that time.

Finally, Soco West's argument that Banker somehow lacked authority to consent to the settlement or that he nullified the consent by prompt disavowal also fails. With respect to Banker's authority, although Soco West is correct that the decision to settle a case rests with the client and not the attorney, it is presumed that an attorney-of-record who enters into a settlement agreement had authority to

do so, and a party challenging an attorney's authority to settle the case bears the burden of proving by affirmative evidence that the attorney lacked authority. *In re Artha Management, Inc.,* 91 F.3d 326, 329 (2d. Cir. 1996). Here, there is no evidence Banker overstepped his authority. In fact, when Banker approved the settlement agreement with his assertion that "This language is acceptable to Soco, and Soco will execute it in this form," he was giving final approval to a written version of what Soco West's president had already negotiated.

Soco also argues that the agreement is not binding on it because it promptly withdrew its consent to the settlement agreement. Under *Montana Homes,* a principal who claims his agent has transcended his authority, must promptly disavow the agent's action. 287 Fed.Appx. at 598. Here, not only did Banker not transcend his authority, since he was merely stating Soco would sign an agreement negotiated by its president, but Soco West did not promptly raise the issue. Soco did not notify the Insurers of its "issues" until twenty days after the agreement of the principals and two days after Banker said Soco would execute the agreement as written.

Accordingly, the Court concludes Soco West manifested an assent to the settlement agreement attached to Robert Johnson's December 20, 2010 email and is bound by that agreement. *Montana Homes,* 287 Fed.Appx. at 597. **IV.**

13

**<u>ORDER</u>**

For those reasons, **IT IS HEREBY ORDERED** that the Insurers' Joint

Motion to Enforce Settlement (*Doc. 731*) is **GRANTED.**

The Clerk of Court is directed to notify the parties of the entry of this Order,

terminate the Insurer's Joint Motion to Strike Portions of Mehta Affidavit (*Doc.*

*740*), and close this case.

Dated this 16th day of March, 2011.

*/s/ Richard F. Cebull*_____
Richard F. Cebull
United States District Judge